JOHNSTONE, Justice.
The parties remaining in this case and appearing before us are the plaintiff Calhoun County Economic Development Council (hereinafter, “Council”) and its insurer, the defendant National Security Fire & Casualty Company. We will explain the case in terms of only the facts, procedural and substantive, that make a difference material to the remaining issues between these two remaining parties. The plaintiff Council appeals an adverse judgment, and we affirm it.
*25 The Council sued its insurer National Security for breach of the insurance contract and for bad faith in failing to defend and to indemnify the Council against a suit by some people named Trawiek, who are not and were not parties to the case presently before us. The Trawicks alleged in their separate action that the Council, as the owner of an industrial park, had conducted or allowed some regrading of its land and thereby had channeled the flow of waters across it in such a way as to wash, to flood, and to damage the Trawicks’ adjacent real estate.
The contract and bad faith claims of the Council against its insurer National Security went to trial, where, in due course, the Council moved for judgment as a matter of law in its own favor on both claims. The trial court denied this motion for judgment as a matter of law but submitted both of the claims,-contract and bad faith, to the jury, which returned a defense verdict in favor of National Security on both claims.
The Council appeals to us on the sole ground that the trial court erred in denying the motion of the Council for judgment as a matter of law in its own favor on its claims. In this appeal, the Council does not claim any error whatsoever except the denial of its motion for judgment as a matter of law. Therefore, we will resolve this appeal by deciding whether the Council was entitled to judgment as a matter of law on the basis of facts not genuinely disputed. See S & W Props., Inc. v. American Motorists Ins. Co., 668 So.2d 529 (Ala.1995).
The successive insurance policies issued by National Security to the Council insured it against liability for “occurrences” on its property. The insurance excluded damage “expected or intended from the standpoint of the” Council.
Although the Trawicks sued the Council while this insurance was in force, a number of facts adverse to coverage are supported by substantial evidence, uncon-tradicted in some instances. First, the regrading of the Council property and the first damage to the Trawicks’ property occurred before the effective date of the insurance. Second, the Council knew about the grading-and-runoff problem with the Trawicks, commissioned a study of the problem, and did nothing more about the problem before the effective date of the insurance. Third, the Council did nothing to alter its property or to alleviate or to exacerbate the Trawicks’ problem after the effective date of the insurance. Fourth, the Trawicks’ complaint alleges that the torts by the Council began before the effective date of the insurance. Fifth, the Council withheld disclosure of the grading-runoff-Trawick problem after the Council already knew about it as already described, in order to get the insurance in the first place. That is, in response to the query on the insurance application that said, “Enter all claims or occurrences that may give rise to claims for the last five years” (emphasis added), the Council checked a box which indicated the nonexistence of any such claims or occurrences; yet the Council argued to the trial court and now argues to us, as it must to prevail, that the events precipitating the Trawiek suit were “occurrences” covered and not excluded by the insurance.
The record further contains substantial, if not undisputed, evidence pertinent to the way National Security handled the Traw-ick lawsuit for the Council. First, while the lawyer for the Council attended to the filing of its answer to the Trawicks’ complaint, he did not forward the complaint to National Security until some four months after it was filed. Second, while National Security did not discuss the case with the lawyer for the Council until nearly three *26 months later, the intervening delay was caused largely by the failure of the Council lawyer to return the prompt initial telephone call from National Security, by mutual oversights of both parties, and by the glut of claims occasioned by Hurricane Opal. Third, National Security wrote the lawyer for the Council a reservation-of-rights letter two days after talking with him about the claim. The reservation included quotations from the policy limiting coverage to “occurrences” “during the policy period.” The reservation-of-rights letter also employed the Council lawyer to defend the Trawick lawsuit. Fourth, National Security employed an adjusting firm to investigate the Trawick claim. Fifth, after some investigation and about ten months after National Security received the claim, it denied the claim “because the damages occurred prior to our policy period.”
National Security did not sue the Council to cancel or to rescind the insurance on the ground of fraud by the Council in applying for the insurance. Rather, National Security relegated itself to the defense that all of the Trawicks’ claims, regardless of whether they accrued before or after the effective date of the insurance, were excluded from coverage because they were “expected or intended from the standpoint of the insured,” the Council, in that the Council knew full well about the existing and ongoing problem with the Trawicks before the Council even applied for the insurance.
The parties’ respective briefs contain thorough discussions of the case law addressing whether damage is “expected or intended from the standpoint of the insured.” The parties have joined issue on this question. The applicability of this exclusion to coverage is judged by “a purely subjective standard.” Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer, 454 So.2d 921, 925 (Ala.1984). Damage would be “ ‘expected from the standpoint of the insured’ if the insured subjectively possessed a high degree of certainty that [damage] to another would result from the [insured’s] act.” Id. (Emphasis added.)
The misrepresentation of the Council about the nonexistence of the grading-runoff-Trawick problem in order to obtain the insurance in the first place supports an inference that the Council thought potential damage it wanted covered was so likely that the insurer would not cover it if the insurer knew the truth about the risk of the damage. Whether or not this degree of anticipation by the Council equated to “a high degree of certainty” would depend on the fact-finder’s assessment of the evidence about the knowledge and motivation of the Council. Thus the contract claim by the Council presented a genuine issue of fact for the jury to resolve; and the trial court correctly denied the motion of the Council for a judgment in its own favor as a matter of law on this claim.
The jury decided the contract claim and implicitly the insurance coverage issue against the plaintiff Council and in favor of the defendant insurer National Security, and the trial court entered judgment on that verdict. That verdict and judgment, which we hold valid, moot the issue of whether the trial court erred in denying the motion of the Council for a judgment as a matter of law in its own favor on its bad faith claim; for a party without insurance coverage cannot recover for the insurer’s bad faith failure to honor the nonexistent coverage. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala.1999).
We have decided the first claim of error adversely to the Council. Its second claim of error is moot. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
*27 MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.