On May 26, 1995, Simmie James Slay, Jr., and his wife Virginia sued Keller Industries, Inc., and Watters Distributing Company, Inc., d/b/a Cash and Carry Building Supply,[1] under the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD"). The complaint asserted claims alleging negligent or willful or wanton design, manufacture, and distribution, and failure to include adequate instructions and warnings with respect to an aluminum ladder manufactured by Keller Industries in 1974 and distributed by Watters Distributing Company. In 1994, Slay fell from the ladder, breaking several bones and damaging his kidneys. Mrs. Slay asserted a separate loss-of-consortium claim.
After the complaint was filed, Keller filed a petition in bankruptcy, and the case was stayed pending the outcome of the bankruptcy proceeding. When the case, now with Keller as the only defendant, was returned to the active docket, Keller filed a motion in limine, seeking to preclude the introduction of deposition testimony by the plaintiffs' expert, Dr. B.J. Stephens. Keller also moved for a summary judgment. The parties stipulated to the facts so there was no genuine issue of material fact remaining, and the court then considered whether Keller was entitled to a judgment as a matter of law. The trial court determined that to survive a summary-judgment motion in an action brought under the AEMLD, the Slays, as the nonmovants, must offer substantial evidence that the defendant negligently designed or manufactured the ladder on which Slay was injured; that Keller could have reasonably anticipated that the ladder was inherently or imminently dangerous to human life or health when put to its intended, ordinary, and customary use; that the ladder was inherently or imminently dangerous to Slay while it was being used in the way in which it was intended to be used; and that Keller's negligent design or manufacture proximately caused Slay's injury.
The trial court found that the Slays could not offer substantial evidence, through their expert or otherwise, indicating that Keller's negligence or wantonness had caused Slay's injury. The Slays' expert could not say with any reasonable degree of certainty that the ladder, as manufactured, was defective or that any manufacturing defect in the ladder had caused Slay's fall. Although the expert suggested certain design changes that he believed could improve the ladder, he did not show that the ladder was defective when it was manufactured in 1974. The trial court granted Keller's motion for a summary judgment. The Slays appealed.
 "We review a summary judgment de novo. Alabama Ins. Guar. Ass'n v. Southern Alloy Corp., 782 So.2d 203
(Ala. 2000). We apply the same standard of review as the trial court in determining whether the evidence presented to the trial court demonstrated the existence of a genuine issue of material fact. *Page 625 
 Jefferson County Comm'n v. ECO Preservation Servs., L.L.C., [788] So.2d [121] (Ala. 2000) (quoting Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988)). A summary judgment is proper where `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P. See Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999), and Lawson State Comm. College v. First Continental Leasing Corp., 529 So.2d 926
(Ala. 1988)."
Northwest Florida Truss, Inc. v. Baldwin County Comm'n, 782 So.2d 274,276 (Ala. 2000).
Examining the evidence presented de novo, we are convinced that the trial court did not err in entering the summary judgment. In entering the summary judgment, however, the trial judge did not explicitly state whether he excluded Dr. Stephens's testimony in response to Keller's motion in limine or whether he considered Dr. Stephens's testimony and determined that it did not create a genuine issue as to any material fact. Under either rationale, the trial judge's summary judgment for Keller was proper.
"[A]n expert witness' competence to testify is an inquiry substantially within the discretion of the trial judge. [An appellate court] will not disturb the trial judge's finding of expert qualifications vel non, unless there is a clear abuse of this discretion." Cobb v. State,50 Ala. App. 707, 710, 282 So.2d 327, 329 (1973), citing King v. State,266 Ala. 232, 95 So.2d 816 (1957). The Slays' expert witness, Dr. B.J. Stephens, is a mechanical engineer with degrees from Duke University. His deposition testimony made it clear that Dr. Stephens is not an accident reconstructionist and that, in fact, he did not reconstruct this accident. He testified that he did not perform any tests on the ladder on which the accident occurred or on exemplar ladders. He further testified that the ladder met the American National Safety Institute standards in place at the time the ladder was manufactured. Dr. Stephens stated that he does not believe the ladder was defective, although he said he believed that it was "possibly underdesigned." He offered no test results or factual information to support his belief that the ladder was "underdesigned," though he suggests the rather obvious conclusion that the ladder would have been stronger if it had been constructed using a thicker-gauge aluminum. In response to questions posed by Keller's counsel during his deposition, Dr. Stephens could not, however, state what gauge aluminum the ladder was made of, because he had not measured it.
Keller urges this Court to take this opportunity to adopt in civil cases the "scientifically reliable" test for expert witnesses spelled out in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).[2]
This Court stated in Courtaulds Fibers, Inc. v. Long, 779 So.2d 198
(Ala. 2000), that it had "not abandoned the `general acceptance' test stated in Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923), and it [had] not adopted the Daubert standard in civil cases. Southern EnergyHomes, Inc. v. Washington, 774 So.2d 505 (Ala. 2000)." 779 So.2d at 202. The *Page 626 
general-acceptance standard was enunciated in Frye:
 "Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."
Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923). Under this standard, a person who offers an opinion as a scientific expert must prove that he relied on scientific principles, methods, or procedures that have gained general acceptance in the field in which the expert is testifying.
Mere assertions of belief, without any supporting research, testing, or experiments, cannot qualify as proper expert scientific testimony under either the "general-acceptance" standard enunciated in Frye or the "scientifically reliable" standard of Daubert. Both general acceptance in the scientific community and a reliable basis in the knowledge and experience of a discipline are lacking in Dr. Stephens's deposition testimony in this case. He admitted in his deposition that he had performed no tests on the ladder or on any exemplar ladders, that he had not measured the gauge of aluminum used to make the ladder, that he had not reconstructed the accident to determine the sequence of events and the causes of those events, and that he had not determined that the ladder was in any way defective in its design, manufacture, or distribution, or that Keller failed to provide adequate warnings. His bald assertion in testimony that the ladder was "possibly underdesigned," even if asserted by a mechanical engineer generally qualified to speak expertly on such matters, does not have the proper generally accepted scientific support necessary to create a material issue of fact and is not sufficient to carry the nonmovants' burden on a motion for a summary judgment.
 "A party opposing a motion for summary judgment cannot create a genuine issue of material fact by merely stating that he believes that the statement of fact made in support of the motion is incorrect. He must present facts, not merely inferences based upon belief, that counter the facts offered in support of the motion."
Davis v. Ford Motor Credit Co., 599 So.2d 1123, 1125 (Ala. 1992).
If, therefore, the trial judge did consider the testimony of the Slays' expert witness in entering the summary judgment for Keller, that decision was without error because the expert testimony, even if considered, was not sufficient to carry their burden of proof. The Slays have not presented sufficient evidence to create a genuine issue of material fact and thereby defeat Keller's properly supported motion for a summary judgment. If the trial court excluded Dr. Stephens's testimony in response to Keller's motion in limine, that decision was within the trial court's discretion, and the subsequent entry of a summary judgment for Keller was without error.
AFFIRMED.
Moore, C.J., and Brown, Harwood, and Stuart, JJ., concur.
[1] Watters Distributing Company filed a motion for a summary judgment, which the trial court granted. Slay does not challenge that judgment on appeal.
[2] Because we do not believe, as we discuss later in the opinion, that Dr. Stephens's testimony would meet the scientifically reliable test inDaubert, adopting that standard would make no difference in the outcome of this case. We therefore decline to address this issue. *Page 627