The defendants Elton O. Tanner, Jr. ("Tanner"), and Tanner 
Company, P.C. ("Tanner Co."), appeal a summary judgment for the plaintiff State Farm Fire Casualty Company in a declaratory judgment action. The judgment declared that a State Farm liability insurance policy ("the policy") did not cover Tanner and Tanner Co. for a lawsuit Wayne R. Mitchell had filed against them ("Mitchell's lawsuit"). We affirm in part, reverse in part, and remand with directions.
 Facts
Mitchell, a partner in two partnerships named MASCO I and MASCO IV, sued the other partners, including Tanner, for suppression; breach of fiduciary duty; conversion; and intentional, reckless, and *Page 1060 
innocent misrepresentation. Mitchell alleged that Tanner and the other partners had swapped the maritime vessels constituting the principal assets of the partnerships for replacement vessels without Mitchell's knowledge; that Tanner and the other partners had concealed these swaps from Mitchell; that Tanner and the other partners had misled Mitchell concerning these swaps; and that Tanner and the other partners had withheld information and documents Mitchell had requested relating to MASCO I and MASCO IV.
Subsequently, Mitchell amended his complaint to add separate claims against Tanner, who was also Mitchell's accountant, for accounting malpractice allegedly committed in rendering accounting services that related to Mitchell's investments in MASCO I and MASCO IV.
On receiving Mitchell's lawsuit papers, Tanner requested that State Farm defend and indemnify him under a policy of liability insurance.[1]
State Farm refused Tanner's request and, instead, brought this declaratory judgment action for a declaration that the policy did not afford Tanner coverage for Mitchell's claims. Meanwhile, in Mitchell's lawsuit, Tanner's accounting-malpractice insurer, Interstate Insurance Company, defended Tanner.
Tanner filed his answer to the State Farm declaratory judgment action. While the answer is not also entitled a counterclaim for declaratory judgment, it is, by its content, tantamount to a counterclaim for a declaration that Tanner was due defense and indemnification under the State Farm policy.
Subsequently, Mitchell amended his complaint again to add Tanner 
Co., Tanner's professional corporation, as an additional defendant. Mitchell's amended allegations included Tanner Co. itself as a partner in MASCO I and MASCO IV and charged Tanner in his capacity as the "owner and principal" of Tanner Co. as well as in his capacity as an individual partner for his allegedly tortious partnership participation:
 "5. In or about 1984, Plaintiff Wayne R. Mitchell, an adult resident citizen of Mobile County, Alabama, entered into general partnership agreements with, among others, Defendants James Michael Rice, Elton O. Tanner, Jr., Tanner Co., Professional Corporation, Master Boat Builders and MASCO Boats, Inc. The purpose of these partnership agreements [was] for the partners to contribute sums of money so that Master Boat Builders could manufacture certain motor vessels which, upon completion, would be leased for the purpose of generating income on behalf of the partnerships. . . .
"6. . . . .
 "7. In or about October, 1996, Plaintiff was notified by Defendant, Elton O. Tanner, Jr. the owner and principal of Defendant, Tanner Co., Professional Corporation, that all the other partners wanted to terminate the partnership agreements and that Plaintiff's share, upon dissolution of the partnerships, was $20,000.00 for MASCO I and $20,000.00 for MASCO IV.
 "8. Plaintiff objected to the dissolution of the partnership agreements and called upon Tanner, as owner and principal of Tanner Co., Professional Corporation, and as general partner of the partnerships and as Plaintiff's professional *Page 1061 
accountant, to explain how his proportionate shares had been calculated and to provide an accounting of Plaintiff's shares and of the shares of the other partners in MASCO I and MASCO IV. Tanner refused to provide any information whatsoever in response to Plaintiff's requests. . . ."
(Emphasis added.) Mitchell's complaint as last amended alleged against Tanner and Tanner Co. in these capacities all of the claims Mitchell had already alleged against Tanner as an individual partner. State Farm then amended its complaint in this declaratory judgment action to add Tanner Co. as an additional defendant and to seek a declaratory judgment that Tanner Co. was not entitled to coverage either.
State Farm declined to participate in settlement negotiations in Mitchell's lawsuit. When Tanner notified State Farm that he intended to settle Mitchell's claims for $50,000, State Farm refused to contribute any of the settlement funds. Interstate Insurance Company contributed $20,000 of the settlement funds, and Tanner paid the remaining $30,000.
After Tanner settled Mitchell's lawsuit, State Farm moved for summary judgment in this declaratory judgment action on the grounds that: (1) Mitchell had sued Tanner and Tanner Co. for intentional conduct which did not constitute an "occurrence" under the insuring clause of the policy and which would incur the exclusion in the policy for damages "intended or expected from the standpoint of the insured"; and (2) Mitchell had sued Tanner and Tanner Co. for conduct which would incur the exclusion in the policy for damages "due to the rendering of professional services." State Farm conceded in the supporting brief that, because Mitchell had claimed damages for mental anguish as well as pecuniary loss, State Farm was not entitled to a summary judgment on the ground that Mitchell's lawsuit had not claimed damages for "bodily injury." Although State Farm did initially assert as a ground for summary judgment that Tanner had failed to give timely notice of Mitchell's claims, State Farm subsequently conceded that it could not prevail on this ground. State Farm did not assert as a ground for summary judgment either that Tanner Co. was not an insured as defined by the policy or that Tanner himself was not an insured as defined by the policy.
As evidence in support of summary judgment, State Farm submitted the policy, Mitchell's lawsuit complaint, and the depositions of Mitchell and Tanner taken in this declaratory judgment action.
The policy defines who is an insured, in pertinent part:
"1. If you are designated in the Declarations as:
". . . .
 "c. an organization other than a partnership or joint venture, you are an insured. Your executive officers, directors and trustees are insureds but only with respect to their duties as your officers, directors, or trustees. Your stockholders are also insureds but only with respect to their liability as stockholders."
"2. Each of the following is also an insured:
 "a. your employees, other than your executive officers, but only for acts within the scope of their employment by you."
The insuring clause of the policy provides, in pertinent part:
 "[State Farm] will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies. . . . This insurance applies only: *Page 1062 
1. to bodily injury . . . caused by an occurrence. . . ."
The policy defines "occurrence," in pertinent part, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury. . . ."
The duty-to-defend clause in the policy provides, in pertinent part:
 "We will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent. . . ."
The exclusion for damages "expected or intended from the standpoint of the insured" provides, in pertinent part:
"[T]his insurance does not apply:
"1. to bodily injury . . .:
"a. expected or intended from the standpoint of the insured. . . ."
The exclusion for damages "due to the rendering of professional services" provides, in pertinent part:
"[T]his insurance does not apply:
". . . .
 "10. to bodily injury . . . due to rendering or failure to render any professional services. . . . This includes but is not limited to:
"a. . . . accounting . . . services. . . ."
Mitchell testified in the deposition State Farm took after Mitchell had settled his lawsuit that, although Mitchell's lawsuit complaint had contained claims that Tanner, in his capacity as Mitchell's partner, had wronged Mitchell unintentionally, Mitchell had actually "felt" or "contended" that Tanner had been acting in his capacity as Mitchell's accountant when Tanner wronged Mitchell and that Tanner had been acting intentionally when he wronged Mitchell:
 "Q. And so regardless of what your lawyers may have done in their legalese or legal couching of claims, your contention all along was he should have told me as my accountant and rendered a professional service to me by telling me as my accountant and my financial advisor, these things are going on, because I was entitled to know and he didn't tell me?
"A. I feel he should have told me.
"Q. And you feel like he intentionally didn't tell you?
"I —
". . . .
"A. I feel like he intentionally didn't tell me.
"Q. That's been your claim all along?
"A. That's been my claim all along."
Tanner and Tanner Co., opposing summary judgment for State Farm and cross-moving for summary judgment, argued that: (1) Mitchell's claims for innocent misrepresentation, reckless misrepresentation, and suppression constituted "occurrences" under the insuring clause of the policy and did not incur the exclusion for damages "expected or intended from the standpoint of the insured" because Tanner did not subjectively expect or intend to cause any damage to Mitchell; and (2) the exclusion for damages "due to the rendering of professional services" did not exclude Mitchell's claims against Tanner or Tanner Co. for innocent misrepresentation, reckless misrepresentation, or suppression because those claims arose from Tanner and Mitchell's relationship as partners rather than their relationship as accountant and client.
Tanner and Tanner Co. submitted an affidavit from Tanner in opposition to State Farm's summary-judgment motion. In the affidavit, Tanner testified that he had not intentionally misrepresented any *Page 1063 
facts to Mitchell; had not intentionally misled Mitchell in any way; and, specifically, had not intentionally misrepresented any facts regarding the swaps of the vessels:
 "Never did I intend to misrepresent anything to [Mitchell] or intentionally mislead him in any way.
 "I never intended to misrepresent anything to Mr. Mitchell concerning the swaps of the vessels. . . ."
Entering summary judgment for State Farm, the trial court held that State Farm owed no duty to defend Tanner or Tanner Co. in Mitchell's lawsuit and that State Farm owed no duty to indemnify Tanner or Tanner Co. for Mitchell's claims. In entering summary judgment for State Farm, the trial court said:
 "4. The Court finds that Wayne R. Mitchell, by his very testimony, has established that he was seeking damages only for intentional conduct. Further, the Court finds that the basis of the claims of Wayne R. Mitchell against Elton O. Tanner, Jr. deal with rendering or failure to render accounting services. The Court finds that the professional services exclusion applies as does the intentional act exclusion to preclude coverage for the claims of Wayne R. Mitchell. The Court finds that there has been no `occurrence' as defined by the State Farm policy. . . ."
Although the trial court did not expressly state that it was denying the cross-motion of Tanner and Tanner Co. for summary judgment, the entry of judgment for State Farm necessarily constituted a denial of the cross-motion of Tanner and Tanner Co.
 Issues
This appeal presents these issues: (1) whether the evidence before the trial court established, without genuine dispute of material fact and as a matter of law, that State Farm did not owe a duty to defend Tanner and Tanner Co.; and (2) whether the evidence before the trial court established, without genuine dispute of material fact and as a matter of law, that State Farm did not owe a duty to indemnify Tanner and Tanner Co.
 Standard of Review "'We review a summary judgment de novo. We apply the same standard of review as the trial court in determining whether the evidence presented to the trial court demonstrated the existence of a genuine issue of material fact. A summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"
Slay v. Keller Indus., Inc., 823 So.2d 623, 624-25 (Ala. 2001) (citations omitted) (quoting Northwest Florida Truss, Inc. v. Baldwin CountyComm'n, 782 So.2d 274, 276 (Ala. 2000)).
 Duty to Defend
Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify. Porterfield v. Audubon Indem.Co., [Ms. 1010894, November 22, 2002], 856 So.2d 789, 791-92 (Ala. 2002).
 "It is well settled `that [an] insurer's duty to defend is more extensive than its duty to [indemnify].' United States Fid. Guar. Co. v. Armstrong, 479 So.2d 1164, 1168 (Ala. 1985) (citations omitted). Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. Id. at 1168. If the allegations of the *Page 1064 injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. Ladner Co. v. Southern Guar. Ins. Co., 347 So.2d 100, 102 (Ala. 1977) (citing Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 77 N.E.2d 131
(1948)). However, '[t]his Court . . . has rejected the argument that the insurer's obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured.' Ladner, 347 So.2d at 103. In Pacific Indemnity Co. v. Run-A-Ford Co., 276 Ala. 311, 161 So.2d 789 (1964), this Court explained:
 "'We are of opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence. . . .'
 "276 Ala. at 318, 161 So.2d at 795; see Ladner, 347 So.2d at 103 (quoting this language). '[I]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured.' Blackburn v. Fidelity Deposit Co. of Maryland, 667 So.2d 661, 668 (Ala. 1995) (citing United States Fid. Guar. Co. v. Armstrong, 479 So.2d 1164 (Ala. 1985)) (other citations omitted). When a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy. Blackburn, 667 So.2d at 670 (citing Tapscott v. Allstate Ins. Co., 526 So.2d 570, 574 (Ala. 1988))."
Acceptance Ins. Co. v. Brown, 832 So.2d 1, 14 (Ala. 2001) (emphasis added). The allegations of the allegedly injured person's complaint against the insured in Acceptance Ins. Co. were ambiguous in that they could be construed either to allege, or not to allege, a covered claim. In the insured's action against the insurer, Acceptance Ins. Co.
therefore held that the evidence of record tending to prove that the allegedly injured person's claim was covered justified the trial court in its submitting to the jury the insured's contention that the claim was covered.
In three cases, Pacific Indemnity Co. v. Run-a-Ford Co., 276 Ala. 311,161 So.2d 789 (1964); Ladner Co. v. Southern Guaranty Ins. Co.,347 So.2d 100 (Ala. 1977); and Tapscott v. Allstate Ins. Co., 526 So.2d 570
(Ala. 1988), this Court held that, if the complaint against the insured does not, on its face, allege a covered accident or occurrence, "other facts which did exist but were not alleged could be taken into consideration" to establish coverage because the policy "should be liberally construed in favor of the insured." Ladner, 347 So.2d at 103. However, this Court has never held that, even though the allegations of a complaint do allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend. In Run-a-Ford, this Court explained why it concluded that the courts can consider admissible evidence outside the injured person's complaint for the benefit of the insured if the allegedly injured person's complaint does not allege a covered accident or occurrence:
 "That conclusion is reached by the following reasoning. The question is: Is insurer's agreement, to defend any suit `alleging such injury,' to be construed as an agreement to defend only a suit in which the complaint, in itself and without the aid of other facts, contains *Page 1065 
allegations sufficient to establish the conclusion that the injury alleged is covered by the policy; or, is the agreement to be construed as one to defend a suit in which the complaint alleges an injury which is within the policy coverage but can be shown to be within the coverage only when facts, which do exist but are not alleged in the complaint, are taken into consideration? The policy does not provide which construction shall be adopted. Under the rule that the policy must be liberally construed in favor of the insured, the latter construction must be adopted. Under the latter construction, facts not alleged in the complaint may be considered."
276 Ala. at 318, 161 So.2d at 795 (emphasis added); accord Ladner, 347 So.2d at 103.
Accordingly, we will summarize the law for determining the existence or nonexistence of an insurer's duty to defend. If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. Acceptance Ins. Co., supra; Run-a-Ford, supra;Ladner, supra. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence. E.g. Acceptance Ins. Co., supra;Porterfield, supra; Townsend Ford, Inc. v. Auto-Owners Ins. Co.,656 So.2d 360 (Ala. 1995).
In alleging innocent misrepresentation and reckless misrepresentation, an allegedly injured person alleges an "occurrence" with damages not "expected or intended from the standpoint of the insured," and the insurer owes a duty to defend its insured against such claims. UniversalUnderwriters Ins. Co. v. Youngblood, 549 So.2d 76 (Ala. 1989); AmericanStates Ins. Co. v. Cooper, 518 So.2d 708 (Ala. 1987).
"[S]uppression of a material fact is not necessarily an intentional tort. . . ." Townsend Ford, 656 So.2d at 364. Consequently, in alleging suppression, an allegedly injured person alleges an "occurrence" with damages not "expected or intended from the standpoint of the insured."Id.
In Ex parte Master Boat Builders, Inc., 779 So.2d 192 (Ala. 2000), this Court, in deciding petitions for writs of mandamus brought by Tanner and the other partners sued in Mitchell's lawsuit, held that, although Mitchell's separate claims against Tanner for accounting malpractice arose out of Tanner and Mitchell's relationship of accountant and client, Mitchell's claims for suppression; conversion; breach of fiduciary duty; and innocent, reckless, and intentional misrepresentation arose out of the partner relationship existing between Mitchell and Tanner. Id. at 196-98. Mitchell's complaint as last amended alleged the same partnership relationship claims against Tanner Co. in its capacity as a partner in MASCO I and MASCO IV and against Tanner in his capacity as "owner and principal" of Tanner Co. Although State Farm argues in brief to us *Page 1066 
that the holdings of Master Boat Builders do not foreclose the conclusion that the claims arising out of the partner relationship nonetheless "relate to rendering or failing to render professional [accounting] services" (appellee's brief p. 6), State Farm does not argue that it is not bound by the holdings of Master BoatBuilders.
Despite Mitchell's testimony that he had always "felt" or "contended" that Tanner had injured him intentionally rather than accidentally, Mitchell alleged claims for innocent misrepresentation, reckless misrepresentation, and suppression, which obliged State Farm to defend Tanner and Tanner Co. against at least those claims. AcceptanceIns. Co., supra; Porterfield, supra; Townsend Ford, supra.[2]
Therefore, we reverse the summary judgment insofar as it declares that State Farm did not owe a duty to defend Tanner and Tanner Co. against Mitchell's claims for innocent misrepresentation, reckless misrepresentation, and suppression. We affirm the summary judgment insofar as it declares that State Farm did not owe a duty to defend Tanner or Tanner Co. against Mitchell's claims for intentional torts and accounting malpractice.
The procedural posture of the cross-motions for summary judgment in this case is like the procedural posture of the cross-motions in LloydNoland Foundation v. City of Fairfield Healthcare Authority, 837 So.2d 253
(Ala. 2002), which held that an "appeal from a pretrial final judgment disposing of all claims in the case (as distinguished from a Rule 54(b) summary judgment disposing of fewer than all claims) entitles the [appellant], for purposes of our review, to raise issues based upon the trial court's . . . denial of [the appellant's] summary-judgment motions. See Ala.R.App.P. 4(a)(1)." Id. at 263. Accordingly, on remand, we direct the trial court to grant the cross-motion of Tanner and Tanner Co. for summary judgment to the extent that it seeks a declaration that State Farm owed Tanner and Tanner Co. a defense against Mitchell's claims for innocent misrepresentation, reckless misrepresentation, and suppression and to deny the cross-motion insofar as it seeks a declaration that State Farm owed a duty to defend Mitchell's claims for intentional torts and accounting malpractice.
 Duty to Indemnify
"Although the bare allegations of the complaint may trigger an insurer's duty to defend its insureds, `[t]he duty to pay . . . must be analyzed separately.'" Porterfield, 856 So.2d at 792 (quoting UnitedStates Fid. Guar. Co. v. Armstrong, 479 So.2d 1164, 1167 (Ala. 1985)). The insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify. CityRealty, Inc. v. Continental Cas. Co., 623 So.2d 1039, 1047 (Ala. 1993);see Calhoun County Economic Dev. Council v. National Sec. Fire Cas. Co., 808 So.2d 24 (Ala. 2001).
In Alabama Farm Bureau Mutual Casualty Insurance Co. v. Dyer,454 So.2d 921 (Ala. 1984), this Court held that a purely subjective standard governs the determination of what constitutes an "occurrence" *Page 1067 
causing bodily injury or property damage that is not "expected or intended from the standpoint of the insured":
 "Because the presumption in tort and criminal law that a person intends the natural and probable consequences of his or her intentional acts has no application to the interpretation of the terms used in the `expected or intended from the standpoint of the insured' policy exclusion, the policy term, `expected or intended injury,' cannot be equated with `foreseeable injury.' See Smith v. North River Ins. Co., 360 So.2d 313, 315
(Ala. 1978) (question of intent in personal injury action not the same as question of `expected or intended' injury in policy exclusion).
 ". . . [A] purely subjective standard governs the determination of whether the insured Wayne Dyer either expected or intended to inflict bodily injury upon his brother, William. Under this subjective test, an injury is `intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is `expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act. See Continental Western Ins. Co. v. Toal, 244 N.W.2d 121, 125 (Minn. 1976), for a thorough discussion of the proper standard used to interpret this policy exclusion."
Id. at 925. Accord Calhoun County Econ. Dev. Council, 808 So.2d at 26;Jackson v. State Farm Fire Cas. Co., 661 So.2d 232, 233 (Ala. 1995); Haisten v. Audubon Indem. Co., 642 So.2d 404, 406-07 (Ala. 1994); and Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349,1351-52 (Ala. 1994).
"[T]he question of whether an injury which the insured inflicts upon another person is `expected or intended from the standpoint of the insured' is a question of fact for the jury or judge." Dyer, 454 So.2d at 924.
In the present case, the trial court erred in entering summary judgment for State Farm on the duty to indemnify. Mitchell's testimony that he "felt" or "contended" that Tanner had wronged him intentionally is not relevant to the duty to indemnify, which is determined by Tanner's actual subjective state of mind rather than by Mitchell's contentions. CityRealty, Inc., supra. Whether State Farm owes a duty to indemnify Tanner and Tanner Co. depends on the fact-finder's assessment of the circumstantial evidence and Tanner's testimony concerning whether Tanner either possessed a specific intent to cause Mitchell bodily injury or subjectively possessed a high degree of certainty that his actions would cause Mitchell bodily injury. Calhoun County Econ. Dev. Council, supra;City Realty, Inc., supra.
Therefore, we reverse the summary judgment insofar as it declares that State Farm does not owe a duty to indemnify Tanner and Tanner Co. for Mitchell's claims for innocent misrepresentation, reckless misrepresentation, and suppression.[3] We affirm the summary judgment insofar as it declares that State Farm does not owe a duty to indemnify Tanner or Tanner Co. for Mitchell's claims for *Page 1068 
intentional torts and accounting malpractice. We remand for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
HOUSTON, SEE, LYONS, HARWOOD, and WOODALL, JJ., concur.
MOORE, C.J., and BROWN and STUART, JJ., concur in the result.
[1] Although State Farm initially sought declaratory relief concerning three policies, the parties subsequently stipulated that the only policy at issue in this declaratory judgment action is State Farm's policy number 93-33-5214-7 issued to Tanner Co., P.C., as the named insured.
[2] In moving for summary judgment, State Farm did not challenge the status of either Tanner Co. or Tanner as an insured as defined by the policy within the context of Mitchell's lawsuit. Had State Farm asserted such a challenge, it would have been unavailing insofar as Mitchell's complaint as last amended expressly identified and sued Tanner Co. itself as a partner in MASCO I and MASCO IV and ascribed Tanner's allegedly tortious partnership participation to him in his capacity as the "owner and principal" of Tanner Co. That is, the definition of insured, already quoted, in the policy includes both Tanner and Tanner Co. to the extent of these allegations.
[3] State Farm did not base its motion for summary judgment on a challenge to the status of either Tanner Co. or Tanner as an insured as defined by the policy within the context of Mitchell's lawsuit. The motion does not assert that Tanner Co. was not a partner of MASCO I and MASCO IV. Indeed, the motion affirmatively recites:
 "Mitchell says that he entered into partnership agreements in 1984 with Elton Tanner, Tanner 
Co. and others with regard to two boats (p. 12,14). The partnerships were called MASCO I and MASCO IV (p. 14)."
Likewise, the summary judgment motion does not assert that Tanner's allegedly tortious participation in these partnerships was not among his duties as an officer of Tanner Co.
 "[A] party seeking a summary judgment always bears the initial responsibility of informing the [trial] court of the basis of its motion. Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When a motion for summary judgment is based on a failure of the nonmovant's evidence, the moving party must indicate where the nonmovant's case suffers an evidentiary failure. Id."
Kennedy v. Western Sizzlin Corp., [Ms. 1010804, March 7, 2003],857 So.2d 71, 78 (Ala. 2003) (internal quotation marks omitted; alterations original). If a summary-judgment motion does not inform the trial court (and the nonmovant) of a failure of the nonmovant's evidence on a fact or issue, no burden shifts to the nonmovant to present substantial evidence on that fact or issue. Rector, supra, and Kennedy, supra. Therefore, summary judgment for a failure of proof not asserted by the motion for summary judgment is inappropriate. Id. Thus, in the case before us, no burden shifted to Tanner or Tanner Co. to present substantial evidence that Tanner's allegedly tortious participation in MASCO I and MASCO IV was a duty he owed as an officer of Tanner Co., or that Tanner Co. itself was a partner in these partnerships, or that either Tanner or Tanner Co. was otherwise an insured within the definition of the policy within the context of Mitchell's lawsuit. Accordingly, the summary judgment against Tanner and Tanner Co. cannot be justified or affirmed on a rationale that they were not such insureds.