[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 916 
Tara Kyser and Chris Kyser, the parents of Steven Alvie Kyser, sued Diane Harrison in the Coffee Circuit Court on June 20, 2002, alleging that she wrongfully caused the death of Steven, their infant son. The trial court entered a summary judgment in favor of Harrison; the Kysers appealed.
 I. Facts
On the morning of May 10, 2002, Tara Kyser left Steven at Harrison's place of business, Diane's Daycare. Later that morning at approximately 10:30 a.m., Harrison placed Steven facedown in a crib, where he soon fell asleep. When checking on Steven at around 12:10 p.m. on that same day, Harrison's 14-year-old daughter discovered that he was no longer breathing. Harrison telephoned the police chief, who performed CPR on Steven, to no avail. Steven was then taken to a hospital where he was pronounced dead at 12:50 p.m. An autopsy performed by the Alabama Department of Forensic Sciences reported the cause of death to be sudden infant death syndrome, or SIDS, which, according to Harrison's expert, is considered by the medical community to be an unexplained natural cause of death.
The Kysers sued Harrison in the Coffee Circuit Court, alleging wanton and willful negligence in placing Steven facedown in a crib containing soft materials, which, according to the Kysers, caused Steven's death. Additionally, the Kysers alleged negligent hiring, training, and supervision of Harrison's employees; according to the Kysers, Harrison's 14-year-old daughter was caring for Steven when he died.
Harrison filed a motion for a summary judgment on December 5, 2003. On February 19, 2004, the Kysers filed a brief in opposition to Harrison's motion, along with the affidavit of their expert, Dr. E. Hunt Scheuerman. In his affidavit, Dr. Scheuerman expressed the opinion that Steven's death was caused by "being placed in a prone sleeping position in a lethal sleep environment and the cause of death was positional asphyxia or in other words, suffocation." The trial court held a hearing on Harrison's summary-judgment motion on March 2, 2004. The day before the hearing, Harrison filed a response to the Kysers' brief in opposition, as well as a motion to exclude Dr. Scheuerman's testimony.
The Kysers contend that they were unaware, until the morning of the summary-judgment hearing, of both Harrison's response to their brief in opposition and of Harrison's motion to exclude Dr. Scheuerman's testimony. The Kysers allege that Harrison faxed a copy of those documents to the office of the Kysers' attorneys after business hours on the night before the hearing on the summary-judgment motion, and that the faxed documents were not discovered until the next day.
Fifteen days after the hearing on the summary-judgment motion, the Kysers filed responses to Harrison's reply to the Kysers' brief in opposition to the motion for summary judgment and to Harrison's motion to exclude testimony. In a written order, the trial court granted Harrison's motion to exclude Dr. Scheuerman's testimony, along with her motion for a summary judgment, stating: *Page 917 
 "[H]aving conducted [a] hearing [on Harrison's motions] and considered the various pleadings addressed to the issues, the supporting and opposing documentation, and the argument of counsel presented at the March 2, 2004, hearing, but excluding from consideration all post-hearing submissions as untimely filed, [Harrison's motion to exclude and her motion for a summary judgment are granted]."
(Emphasis added.)
On appeal, the Kysers argue that the trial court exceeded its discretion in refusing to consider their written response to Harrison's motion to exclude Dr. Scheuerman's testimony. They also argue that it was error for the trial court to grant Harrison's motion to exclude. Finally, the Kysers contend that even if the trial court properly granted Harrison's motion to exclude, conflicts in the evidence still exist that create a genuine issue of material fact and make a summary judgment improper.
 II. Analysis A. Failure to Consider the Kysers' Response
The Kysers argue that the trial court erred in refusing to consider their written response to Harrison's motion to exclude. In their initial appellate brief, the Kysers cite no legal authority in support of that argument. In Spradlin v. BirminghamAirport Authority, 613 So.2d 347, 348 (Ala. 1993), this Court stated:
 "`Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant. Rule 28(a)[(10)], Ala. R.App. P.; Henderson v. Alabama A M Univ., 483 So.2d 392
(Ala. 1986).' Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990)."
In their reply brief, the Kysers cite Rule 6(d), Ala. R. Civ. P., which provides:
 "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five (5) days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than one (1) day before the hearing, unless the court permits them to be served at some other time."
We note "the well-established principle of appellate review that we will not consider an issue not raised in an appellant's initial brief, but raised only in its reply brief." Brown v. St.Vincent's Hosp., 899 So.2d 227, 234 (Ala. 2004). Whether Rule 6(d) was violated in this case is an issue the Kysers raise for the first time in their reply brief, to which Harrison has not had the opportunity to respond.
Even if we were to ignore the fact that the only legal authority cited by the Kysers in support of their argument first appears in their reply brief, the record reveals that the Kysers never presented this argument to the trial court. During the summary-judgment hearing, the following exchange took place with respect to Harrison's motion to exclude:
 "MR. ADAMS [the Kysers' attorney]: Your Honor, if I might, but I would like to go on record and say that [the motion to exclude] . . . was faxed to our office yesterday afternoon after we left. We have not received a copy of that until *Page 918 
this morning. And I just would like for the Court to be aware of that.
 "THE COURT: And let me say this: I don't intend to make a bench ruling on that motion. I'm not going to preclude you from making argument on your response in opposition. Okay?"
The Kysers' attorneys did not ask the trial court for a continuance or for leave to submit additional argument or materials after the hearing, nor did they refer the court to the provision of Rule 6(d), Ala. R. Civ. P., requiring a written motion and notice of the hearing on the motion to be served at least five days before the hearing. "We cannot put a trial court in error for failure to rule on a matter which, according to the record, was not presented to, nor decided by him. . . ." Deforev. Bourjois, Inc., 268 Ala. 228, 230, 105 So.2d 846, 848 (1958). Therefore, we do not reach the question whether the trial court erred in refusing to consider the Kysers' written response to Harrison's motion to exclude.
 B. Harrison's Motion to Exclude 1. Standard of Review
The Kysers next argue that the trial court erred in granting Harrison's motion to exclude the testimony of Dr. Scheuerman. The standard of review applicable to whether an expert should be permitted to testify is well settled. The matter is "largely discretionary with the trial court, and that court's judgment will not be disturbed absent an abuse of discretion." Hannah v.Gregg, Bland Berry, Inc., 840 So.2d 839, 850 (Ala. 2002). We now refer to that standard as a trial court's "exceeding its discretion." See, e.g., Vesta Fire Ins. Corp. v. Milam Co.Constr., Inc., 901 So.2d 84, 106 (Ala. 2004) ("Our review of the record supports the conclusion that the trial court did not exceed its discretion in finding that Jones was properly qualified as an expert under Rule 702[, Ala. R. Evid.,] and in considering his testimony."). However, the standard itself has not changed.
 2. Admissibility of Dr. Scheuerman's affidavit
The gist of Harrison's argument to the trial court in her motion to exclude was that, first, Dr. Scheuerman was not competent to testify as to the cause of death of an infant (from SIDS or some other cause), and second, even if he was, his conclusion, as set forth in his affidavit, was based on nothing more than speculation and conjecture. In ruling on Harrison's motion to exclude, the trial court stated:
 "1. That for the assigned reasons set forth in both [Harrison's motion to exclude] and her response to [the Kysers'] brief in opposition [to Harrison's motion for summary judgment], [the Kysers'] expert, E. Hunt Scheuerman, M.D., is not shown to be properly qualified and/or competent to render a rebutting expert opinion as to medical causation in this case, particularly considering that he does not possess the degree of specialty of [Harrison's] expert, J. Bruce Beckwith, M.D., a pediatric pathologist of international repute, and in view of findings of the State's Chief Medical Examiner, Dr. J.C. Upshaw Downs, as stated in his autopsy report, together with the strong presumption which attends the certificate of death under [§ 12-21-101, Ala. Code 1975].
 "2. That there is no genuine issue as to any material fact and [Harrison] is entitled to a judgment as a matter of law.
 "IT IS, THEREFORE, ORDERED AND DECREED as follows:
 "1. That [Harrison's motion to exclude] is granted. *Page 919 
 "2. That [Harrison's] motion for summary judgment is granted and summary judgment be and hereby is entered for . . . Harrison. . . ."
According to his curriculum vitae, Dr. Scheuerman received his medical degree from the University of Tennessee in 1973. He is licensed to practice medicine in Florida, Louisiana, and Alabama. He is board-certified in anatomic and forensic pathology. From 1985-1987, he served as a state medical examiner in Alabama, and he has served as a medical examiner in Florida at various times throughout his career. According to his affidavit, he has been certified as an expert witness in the fields of forensic sciences and death-scene investigation in Alabama, Louisiana, and Florida.
While it may appear that Dr. Scheuerman has training and experience in the field of forensic pathology, neither his curriculum vitae nor his affidavit show that he has had any training or experience in the field of pediatric pathology, an area of expertise distinct from other disciplines. The highly specialized nature of pediatric pathology is shown by the numerous cases dealing with experts in that field. See, e.g.,Carhart v. Ashcroft, 331 F.Supp.2d 805, 902 (D.Neb. 2004) ("Rebecca Baergen, M.D., is a board-certified clinical pathologist, professor of clinical pathology and laboratory medicine, attending pathologist, and chief of perinatal andpediatric pathology. . . ." (emphasis added)); State v.McKnight, 352 S.C. 635, 643, 576 S.E.2d 168, 172 (2003) ("Another pathologist, Dr. Woodward, who was qualified as an expert in pediatric pathology testified. . . ." (emphasis added)); People v. Strawbridge, 299 A.D.2d 584, 588,751 N.Y.S.2d 606, 610 (2002) ("Donald Singer, a pediatricpathologist with a specialty in perinatal pathology who is board certified in anatomic, clinical and pediatric pathology, concluded that. . . ." (emphasis added)); United States v.Gaskell, 985 F.2d 1056, 1059 (11th Cir. 1993) ("Dr. Glenn Wagner, the Assistant Armed Forces Medical Examiner at the Armed Forces Institute of Pathology and a specialist in pediatricpathology, testified for the defense." (emphasis added));Charney v. Secretary of Dep't of Health Human Servs., (No. 90-1125V, March 22, 1994), n. 13 (Fed.Cl. 1994) (unpublished) ("[I]n the last ten years, the 400 or so members of the Society for Pediatric Pathology working with the American Board of Pathology have brought into being a certified sub-specialty ofpediatric pathology." (emphasis added)).
The record does not reflect that Dr. Scheuerman had sufficient training or experience with the type of infant death that occurred in this case. As previously noted, the trial court concluded that "E. Hunt Scheuerman, M.D., [was] not shown to be properly qualified and/or competent to render a rebutting expert opinion as to medical causation in this case, particularly considering that he does not possess the degree of specialty of [Harrison's] expert, J. Bruce Beckwith, M.D., a pediatricpathologist of international repute. . . ." (emphasis added).[1] Because "an expert may not testify to his opinion on matters *Page 920 
outside of his field of training and experience," CentralAviation Co. v. Perkinson, 269 Ala. 197, 203, 112 So.2d 326, 331
(1959), the trial court acted within its discretion in disqualifying Dr. Scheuerman as an expert witness.
Harrison also argued to the trial court that Dr. Scheuerman's conclusion that Steven died of asphyxiation was based on speculation and conjecture. With respect to the cause of Steven's death, Dr. Scheuerman's affidavit states:
 "I have reviewed the Alabama Department of Forensic Sciences autopsy report of Steven Alvie Kyser, . . . the autopsy photographs . . ., photographs of the death scene. . . . I have also reviewed medical records that were provided on Steven Alvie Kyser for care rendered May 10, 2002 . . . and medical records of pediatrician, Dr. Norma Sumuy . . . as well as the deposition testimony of Dr. J. Bruce Beckwith [Harrison's expert] and Dianne [sic] Harrison. Based upon my knowledge, training and years of experience as a forensic pathologist and having investigated many deaths to determine cause of death, I am of the opinion, based on a reasonable degree of medical certainty that the death of Steven Alvie Kyser was proximately caused by being placed in a prone sleeping position in a lethal sleep environment and the cause of death was positional asphyxia or in other words, suffocation."
In interpreting the standard set forth in Frye v. UnitedStates, 293 F. 1013 (D.C. Cir. 1923), for determining the admissibility of expert testimony, we have said, "[A] person who offers an opinion as a scientific expert must prove that he relied on scientific principles, methods, or procedures that have gained general acceptance in the field in which the expert is testifying." Slay v. Keller Indus., Inc., 823 So.2d 623, 626
(Ala. 2001). We also stated in Slay that "[m]ere assertions of belief, without any supporting research, testing, or experiments, cannot qualify as proper expert scientific testimony under either the `general-acceptance' standard enunciated in Frye or the `scientifically reliable' standard of Daubert [v. Merrell DowPharmaceuticals, Inc., 509 U.S. 579 (1993)]." 823 So.2d at 626.
In the instant case, Dr. Scheuerman's affidavit does not show that he relied on any "scientific principles, methods, or procedures," much less ones that "have gained general acceptance in the field [of pediatric pathology]." Slay, 823 So.2d at 626. His conclusion that Steven died of asphyxiation is nothing more than a "[m]ere assertion of belief, without any supporting research, testing, or experiments, [and it] cannot qualify as proper expert scientific testimony." Slay, 823 So.2d at 626. See also Whatley v. Cardinal Pest Control, 388 So.2d 529, 532
(Ala. 1980) ("Evidence offered in response to [a motion for a summary judgment], in the form of affidavits or otherwise, must be more than a mere verification of the allegations contained in the pleadings. . . ."); Townsend v. General Motors Corp.,642 So.2d 411, 423 (Ala. 1994) ("A[n expert] witness's testimony cannot be based on mere speculation and conjecture.").
Based on the foregoing, the trial court was justified in determining that Dr. Scheuerman was not qualified to testify as to Steven's death, or that, if he was qualified, his affidavit testimony was based simply on speculation and conjecture and was not adequately supported by research, testing, or experimentation. Accordingly, we hold that the trial court did not exceed its discretion in excluding Dr. Scheuerman's testimony. *Page 921 
 C. Summary Judgment
Notwithstanding the proper exclusion of Dr. Scheuerman's testimony, the Kysers contend that even without that testimony there still exists evidence of a genuine issue of material fact. Therefore, according to the Kysers, summary judgment was improper.
 "The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not raise a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 "In our review of a summary judgment, we apply the same standards as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Ex parte Diversey Corp., 742 So.2d 1250, 1251 (Ala. 1999).
In Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999), we noted that this Court should not have overruled LawsonState Community College v. First Continental Leasing Corp.,529 So.2d 926 (Ala. 1988), in Berner v. Caldwell, 543 So.2d 686
(Ala. 1989), as to the movant's burden in the summary-judgment context. We noted that Justice Houston's special concurrence inBerner correctly stated the law with respect to the movant's burden of production in the context of a motion for a summary judgment. In Berner, Justice Houston stated:
 "The manner in which the movant's burden of production is met depends upon which party has the burden of proof . . . at trial. . . .
 "If the burden of proof at trial is on the nonmovant [here, the Kysers], the movant [here, Harrison] may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. . . .
 "The nonmovant may defeat a motion for summary judgment that asserts that the nonmovant has no evidence to establish an essential element of his claim by directing the trial court's attention to evidence of that essential element already in the record, that was ignored or overlooked by the movant. . . ."
543 So.2d at 691 (Houston, J., concurring specially) (emphasis omitted).
The Kysers argue that the deposition of Harrison's expert, Dr. J. Bruce Beckwith, contains evidence of causation, which is the disputed essential element of the Kysers' claim. The Kysers argue that Dr. Beckwith admitted in his deposition that one of the triggering factors associated with SIDS could be the position in which the infant is placed to sleep: *Page 922 
 "Q: Is it fair, then, Doctor, to say that SIDS is multifactorial?
 "A: Yes, I think that's true. It may be that we'll eventually find there's a single discrete mechanism that applies to all [SIDS cases]. But even if that's the case, we'll find, I think, that there are multiple triggers for that mechanism and triggering factors.
 "Q: And one of those triggers could be sleep positioning?
 "A: One of those could be sleep positioning, yes.
 ". . . .
 "Q: Well, you're just speculating, aren't you, Doctor? I mean, you don't know what — you admit that you don't know what the cause of SIDS is, do you?
 "A: That's right.
 "Q: And you admit that most of your research was done 20 years ago?
 "A: Yeah, I'm not doing active research on it now.
 "Q: I guess your just an interested onlooker?
 "A: More than that, I think I'm a senior diplomat kind of person rather than an active participant in the research."
A complete reading of Dr. Beckwith's deposition reveals his belief that a causal connection has not been proven between a prone sleep position and SIDS and that, even if the prone position is one of the causes of SIDS, there has not been proof that the prone position caused Steven's death. Cf. Ex parteDiversey Corp., 742 So.2d at 1254 ("Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause." (internal quotation marks omitted)). Accordingly, we hold that the Kysers have not met their burden of presenting substantial evidence of causation between the actions of Harrison (or her agents or employees) and Steven's death. In the absence of this essential element, the trial court's summary judgment in favor of Harrison was proper.
AFFIRMED.
NABERS, C.J., and HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.
[1] Section 6-5-548(e), Ala. Code 1975, provides that "[a] health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he or she is a`similarly situated health care provider'. . . ." (Emphasis added.) However, because Harrison is not a "health care provider" under § 6-5-542, Ala. Code 1975, § 6-5-548(e) does not apply to this case. Our conclusion as to the insufficiency of Dr. Scheuerman's qualifications as an expert should not be read as a transposition of the standards of § 6-5-548(e) beyond the domain mandated by the Legislature.