Linda Martin, the plaintiff in a medical-malpractice action against Edmund C. Dyas IV, M.D., J. Michael Cockrell, M.D., and The Orthopaedic Group, P.C., appeals from a judgment as a matter of law entered for the defendants, arguing that the trial court erred in excluding the testimony of her expert witness. We reverse and remand.
 I.
The appellant, Linda Martin, has a long history of back and neck problems. The problems began in 1971, and she underwent her first spinal surgery in 1972. Before she underwent the surgery in March 1998 out of which her medical-malpractice case arises, Martin had undergone eight spinal surgeries. Although those surgeries helped Martin to function, she was unable to work and she experienced constant pain.
In March 1996, Martin slipped on some ice while visiting New York and re-injured her back. Dr. Edmund Dyas determined that, as a result of this injury, Martin again needed surgery.[1]
Accordingly, on March 5, 1998, Dr. Dyas performed a lumbar decompression and lateral fusion.[2] *Page 438 
According to Dr. Dyas, the surgery was a success and, on March 16, 1998, Martin was discharged from the hospital and was sent home.
On the morning of March 18, 1998, while at home, Martin fell as she was getting out of bed. She immediately felt a burning sensation and a sharp pain in her back. She telephoned Dr. Dyas, who instructed her to rest, to take some additional pain medication, and to see if the pain subsided. The pain continued to worsen into the evening, and Martin again telephoned Dr. Dyas's office. This time she spoke with his associate, Dr. Michael Cockrell. Dr. Cockrell told Martin to continue following the instructions Dr. Dyas had given her earlier in the day. When the pain did not subside, Martin telephoned her general practitioner's office and eventually went to the emergency room at Providence Hospital that night. At the hospital, Martin was initially examined by the emergency-room physician, who performed standard physical and neurological examinations. He diagnosed Martin with a back strain and recommended that she follow up with Dr. Dyas in the morning.
Dr. Cockrell, who happened to be in the emergency room examining another patient, learned that Martin was also in the emergency room. He visited her and performed physical and neurological examinations. He prescribed some additional pain medication and, at the request of Martin's family, had her admitted to the hospital overnight.
The next morning, March 19, 1998, Dr. Dyas visited Martin in the hospital. Martin complained of pain and some numbness, and, after Dr. Dyas performed some physical and neurological tests, he concluded that she might have an infection at the surgical site, a spinal-fluid problem, or a blood clot, or she might be having an adverse reaction to coming off the narcotics she had received during her postoperative recovery. Accordingly, he scheduled blood tests, an X-ray, and an MRI. Dr. Dyas visited Martin again later that evening; he later stated in his deposition that her pain appeared to have lessened at that time.
On the morning of March 20, 1998, Dr. Dyas again visited Martin. After Martin complained that she was unable to move her legs and that she had no feeling below her knees, Dr. Dyas ordered that the MRI be performed immediately. The MRI revealed a lumbar epidural hematoma in Martin's lower back at the site of the March 5 surgery.[3] The hematoma was in turn causing compression of the nerves in the lumbar spine, resulting in cauda equina syndrome.[4] Martin was taken to surgery to drain the hematoma to relieve the pressure on the nerves. She has since regained some of the strength and feeling in her legs, and she can stand and walk short distances; however, she remains partially paralyzed in her legs and feet.
On March 3, 2000, Martin sued Dr. Dyas, Dr. Cockrell, and the medical group for which they worked, The Orthopaedic Group, P.C. (hereinafter referred to collectively as "the Orthopaedic Group"), alleging that they had negligently failed to timely diagnose the hematoma and resulting *Page 439 
cauda equina syndrome, resulting in her permanent partial paralysis.[5] In August 2001, Martin designated Dr. Charles Clark, a board-certified orthopedic surgeon, as an expert witness.[6] In September 2002, the Orthopaedic Group filed a motion in limine seeking to exclude Dr. Clark's testimony on the basis (1) that he was not similarly situated to Dr. Dyas and Dr. Cockrell as required by § 6-5-548, Ala. Code 1975, a part of the Alabama Medical Liability Act, § 6-5-540 et seq., Ala. Code 1975;[7] (2) that his proposed testimony was outside his area of knowledge, experience, and expertise; and (3) that his testimony was inadmissible under the two-pronged standard set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc.,509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[8] Though phrased differently, all of the grounds asserted by the Orthopaedic Group for excluding Dr. Clark's testimony were essentially based on the same argument — that Dr. Clark should not be allowed to testify as an expert because his emphasis in the field of orthopedics is the cervical (upper) spine, not the lumbar (lower) spine and because he had not performed a lumbar decompression and lateral fusion in over 20 years.
Martin opposed the motion to exclude Dr. Clark's testimony. Immediately before jury selection, the Orthopaedic Group asked the trial court to rule on its pending motion in limine; however, the trial court stated that it was not yet ready to rule on the motion and that none of the parties would be prejudiced if it reserved its ruling on the motion until a later date.
On October 7, 2002, the trial began. On the third day of trial, Martin called Dr. Clark to the stand. After asking him some qualifying questions relating to his background and expertise, Martin tendered him as an expert witness. The Orthopaedic Group conceded that Dr. Clark met the minimum requirements for qualification under § 6-5-548, but objected solely on the basis that Dr. Clark's testimony violated Daubert. After hearing argument *Page 440 
on the issue, the trial court granted the Orthopaedic Group's motion and excluded Dr. Clark's testimony.
At the conclusion of Martin's case, the Orthopaedic Group moved for a judgment as a matter of law, arguing that Martin had failed to present substantial evidence as to the applicable standard of care. The trial court granted the motion. Martin timely appealed, arguing that the trial court erred in excluding Dr. Clark's testimony and in granting the Orthopaedic Group's motion for a judgment as a matter of law.
 II.
The only argument Martin presents in her appellate brief challenging the judgment as a matter of law is that the trial court erred in excluding Dr. Clark's testimony. Therefore, that is the only argument we will consider. See Tucker v.Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala. 2003) ("`An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief.'" (quotingBraxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App. 1988), citing in turn Ex parte Riley, 464 So.2d 92 (Ala. 1985))).
This Court has stated that "[t]he question whether a witness is qualified to give an expert opinion is customarily left to the discretion of the trial court, and the trial court's determination will not be disturbed on appeal absent a finding [that the trial court exceeded its] discretion." Husby v. SouthAlabama Nursing Home, Inc., 712 So.2d 750, 753 (Ala. 1998) (citing Bell v. Hart, 516 So.2d 562, 569 (Ala. 1987)). Accordingly, we review the trial court's decision to exclude Dr. Clark's testimony to determine whether that court exceeded its discretion in doing so.
 III.
In most previous cases involving the application of § 6-5-548, this Court has been called upon to determine whether in fact a proffered expert is a similarly situated physician under the requirements of the statute. See, e.g., Ronderos v. Rowell,868 So.2d 422 (Ala. 2003). The present case is unique in that there is no issue regarding Dr. Clark's eligibility under § 6-5-548; the Orthopaedic Group conceded at trial that he meets the requirements of § 6-5-548. Martin argues that if, in a medical-malpractice action, a proffered expert meets the requirements of § 6-5-548, the trial court does not have the discretion to exclude the expert's testimony. The Orthopaedic Group, however, argues that the requirements of § 6-5-548 are a bare minimum and that a trial court may still act within its discretion to exclude expert-witness testimony based on other factors, including Rule 702, Ala. R. Evid.,[9] andDaubert. The Orthopaedic Group further asks us formally to adopt Daubert as the law in Alabama.
However, it is unnecessary in the present case for this Court to reach the extreme results urged by the parties. The trial court declined to state its rationale for excluding Dr. Clark's testimony; however, it is clear from the Orthopaedic Group's arguments that the decision was necessarily based on a finding that Dr. Clark was not qualified to give expert testimony because his emphasis is in treating the cervical spine, not the lumbar spine, and because he had not performed a lumbar decompression and lateral fusion in *Page 441 
over 20 years. This argument misses the point of Dr. Clark's proffered testimony. Dr. Clark was called to testify that Dr. Dyas and Dr. Cockrell had breached the standard of care in failing to diagnose timely and to treat Martin after her fall on March 18 — he was not called to express his opinion on the quality of the surgery Dr. Dyas performed on March 5. Indeed, the March 5 surgery is irrelevant; Martin has consistently alleged that it was the fall and the Orthopaedic Group's subsequent negligence that caused her injuries, not the surgical procedure.
For that reason, the Orthopaedic Group's argument that Dr. Clark's testimony was rightfully excluded because he specialized in the cervical spine is misguided. More relevant is the fact that Dr. Clark works as an on-call orthopedist and that, while on call, he handles a wide range of orthopedic problems. As part of those duties, he is called upon to diagnose, treat, and provide follow-up care to patients with injuries to all parts of the spine, including the lumbar region. Moreover, as part of his teaching duties, he teaches medical students how to examine patients for all types of spinal injuries and complications.
Given this background, Dr. Clark was qualified to testify as an expert witness. He was a similarly situated physician under §6-5-548. He was qualified by relevant "knowledge, skill, experience, training, or education" under Rule 702, Ala. R. Evid., and his proposed testimony was within the scope of that expertise and was clearly relevant to the issue in dispute. Moreover, while there is no need for this Court to consider Dr. Clark's qualifications in light of Daubert, it seems that Dr. Clark's testimony would pass both the reliability prong and the relevance prong of the Daubert test. Accordingly, it is unnecessary for this Court to consider the more extreme arguments of the parties concerning § 6-5-548 and Daubert; it is sufficient to say, for the reasons stated above, that the trial court exceeded its discretion in excluding Dr. Clark's testimony.See General Motors Corp. v. Jernigan, 883 So.2d 646, 661 (Ala. 2003) (declining to adopt Daubert in design-defect case where expert's testimony was admissible regardless of standard applied).
Finally, we note that the trial court's decision on the third day of trial to exclude Dr. Clark's testimony was the death knell to Martin's case. In a medical-malpractice action, the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care. Lyons v. Walker Reg'l Med. Ctr.,791 So.2d 937, 942 (Ala. 2000). By waiting until the third day of trial to rule on the Orthopaedic Group's motion to exclude Dr. Clark's testimony, the trial court left Martin with no viable opportunity to find another expert witness — effectively preventing her from having any chance of proving her claim.
 IV.
Dr. Clark was qualified to testify as an expert witness pursuant to any of the standards advanced by the parties. Therefore, the trial court exceeded its discretion in excluding his testimony, and the trial court's order in that regard was in error. The judgment entered for the Orthopaedic Group is reversed, and the case is remanded for a new trial to be held on the merits.
REVERSED AND REMANDED.
SEE, BROWN, and STUART, JJ., concur.
HARWOOD, J., concurs specially.
[1] Dr. Dyas had treated Martin as a patient for 24 years, first performing surgery on her back in 1975.
[2] The procedure for a lumbar decompression and lateral fusion consists of removing the bone overlying the affected area in the lower back portion of the spine and placing additional bone out to the side of the open canal in order to allow the joints to grow together.
[3] A lumbar epidural hematoma is a collection of blood in the epidural space.
[4] In layman's terms, the cauda equina nerves "serve all of the body from the hips downward and transmit sensation and motor power or muscle power to the legs and lower extremities. They also control the bladder, bowels and sexual functions. The loss of function in the cauda equina is referred to as Cauda Equina Syndrome. . . ." Jeffers v. Weinger, 132 Ill.App.3d 877, 879,477 N.E.2d 1270, 1272, 87 Ill.Dec. 742, 744 (1985).
[5] Martin also named Providence Hospital as a defendant; however, she settled all claims with Providence before the trial, and Providence is not a party to this appeal.
[6] Dr. Clark completed his undergraduate studies at the University of Notre Dame, where he graduated summa cum laude. He graduated with distinction from the University of Michigan Medical School. After completing postdoctoral work at Yale University, he moved to the University of Iowa, where, at the time of the trial in this case, he was a full professor in both the College of Medicine and the College of Engineering. At that time he was also working as a consulting physician with the Veterans Administration Hospital in Iowa City. Dr. Clark is an editor of the orthopedic journal Journal of Bone and JointSurgery.
[7] Section 6-5-548(c) states, in relevant part:
 "Notwithstanding any provision of the Alabama Rules of Evidence to the contrary, if the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical specialty, and holds himself or herself out as a specialist, a `similarly situated health care provider' is one who meets all of the following requirements:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state.
 "(2) Is trained and experienced in the same specialty.
 "(3) Is certified by an appropriate American board in the same specialty.
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred."
[8] In Daubert, the Supreme Court of the United States held that the trial court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597, 113 S.Ct. 2786.
[9] Ala. R. Evid. 702 states:
 "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."