THOMPSON, Presiding Judge.
 

 Aldridge Creek, located in the City of Huntsville (“the City”), drains an area of approximately 21.7 square miles. In the early morning hours of June 28, 1999, the Aldridge Creek area experienced extraordinarily heavy rainfall totaling approximately six and one-half inches in just six hours. The rain overwhelmed the Al-dridge Creek drainage system, and many locations near’ Aldridge Creek flooded. Stephen Furin, Jeannie Furin, Charles Morgan Drake, Jose Jorge Gonzalez-Tab-lada, and Ileana Caridad Gonzalez^-Tabla-da (collectively “the plaintiffs”) live in a neighborhood near Aldridge Creek. Their homes were flooded in the June 28, 1999, rainfall event (“the flood”).
 

 On December 22, 1999, the plaintiffs submitted claims to the City for damages resulting from the flood.
 
 See
 
 § 11^7-23, Ala.Code 1975. On July 28, 2000, the plaintiffs, individually and on behalf of a purported class, filed a complaint against the City and seven other defendants in the Madison Circuit Court asserting claims of trespass, negligence, nuisance, and inverse condemnation.
 
 [1]
 
 In September 2000, the City filed a motion for a summary judgment as to the plaintiffs’ claims on behalf of a purported class. In November 2000, the plaintiffs asked the trial court to set a scheduling conference for the purpose of establishing a schedule for discovery on class-certification issues. The trial court did not immediately issue a scheduling order or rule on the City’s motion.
 

 On February 1, 2001, pursuant to another motion by the City, the trial court limited the plaintiffs’ claims for damages against the City to $100,000 per injured person and to an aggregate of $300,000 for all injured persons.
 
 See
 
 § 11^7-190, Ala. Code 1975. On June 28, 2001, the plaintiffs amended their complaint to add claims against four additional defendants; three of those defendants were never served. In November 2001, the plaintiffs asked the trial court to continue its scheduled hearing on the class-certification issue on the ground that they had not completed discovery. The trial court granted their motion.
 

 Although the trial court granted the plaintiffs additional time to engage in discovery, it is undisputed that they never conducted any discovery. In fact, it is undisputed that during the seven years
 
 *259
 
 this action was pending in the trial court, the plaintiffs never sought discovery from any of the defendants; the defendants’ employees, agents, or representatives; the defendants’ expert witnesses; or the plaintiffs’ own expert witnesses. On appeal, the plaintiffs note that the record does not show that the City ever sought discovery from them.
 

 In October 2003 and November 2004, with the plaintiffs’ consent, the trial court entered summary judgments as to two of the defendants. On November 23, 2004, the trial court entered a summary judgment in favor of the remaining defendants on the plaintiffs’ claims on behalf of a purported class. The trial court certified its November 23, 2004, order as final pursuant to Rule 54(b), Ala. R. Civ. P.; the plaintiffs never appealed that order. On February 4, 2005, again with the plaintiffs’ consent, the trial court entered a summary judgment in favor of a third defendant. In September 2005, pursuant to a trial court order, the remaining parties mediated their dispute, albeit unsuccessfully.
 

 In October 2005, the plaintiffs filed a motion to consolidate their action with another action pending in the Madison Circuit Court,
 
 Bailey et al. v. City of Huntsville et al.,
 
 CV-01-1371, which the plaintiffs alleged was also related to the flood. The defendants opposed the motion to consolidate. The record does not show that the trial court ever ruled on that motion, and the plaintiffs never requested a hearing on it.
 

 Between May and August 2006, each of the remaining six defendants filed motions for a summary judgment. In support of their motions, the defendants jointly submitted numerous documents and affidavits, including the affidavit of an expert witness, Byron Hinchey, a professional engineer who practiced in the field of storm-water management. Additionally, the defendants separately submitted affidavits from their own representatives and expert witnesses. The City submitted affidavits from three of its employees and its own expert witness, Andrew Reese, a professional hydrologist and engineer practicing in the field of storm-water consulting. Notably, one defendant submitted excerpts from a deposition of an expert witness, John Curry, that had been taken in another action,
 
 Lane et al. v. City of Huntsville,
 
 CV-01-1318 (“the
 
 Lane
 
 action”). Those excerpts of Curry’s deposition testimony related only to the defendant who submitted them and did not mention the City.
 

 On August 29, 2007, more than one year after the City had filed its motion for a summary judgment and more than seven years after the plaintiffs had filed their complaint, the City filed a motion to dismiss the action for want of prosecution. The City based its motion to dismiss, in part, on the plaintiffs’ seven-year failure to conduct discovery and the plaintiffs’ failure to respond to the City’s motion for a summary judgment. The City also filed an alternative request for a hearing on its summary-judgment motion. The other remaining defendants joined the City’s motion to dismiss. The trial court set all dispositive motions for a hearing on September 13, 2007. Two days before the hearing, on September 11, 2007, the plaintiffs responded to the defendants’ summary-judgment motions. To support their response, the plaintiffs submitted an affidavit of Don Strietzel, a resident of the plaintiffs’ neighborhood and a purported expert witness; an affidavit of plaintiff Jose Gonzalez-Tablada; a deposition transcript of John Curry taken in 2003 in the
 
 Lane
 
 action; a deposition transcript of Charles Ming taken in 2003 in the
 
 Lane
 
 action; and an affidavit of the defendants’ expert, Byron Hinchey, that had been sub
 
 *260
 
 mitted into evidence by the City in the
 
 Lane
 
 action in 2003.
 

 On September 12, 2007, the City filed a motion to strike the Strietzel affidavit to the extent that it offered expert opinions. The City argued that Strietzel was not qualified to testify as an expert witness. The City also filed a motion to strike the Curry and Ming deposition transcripts and the Hinchey affidavit from the
 
 Lane
 
 action. The City argued that the evidence from the
 
 Lane
 
 action was inadmissible hearsay under Rules 802 and 804, Ala. R. Evid.
 

 The trial court heard the parties’ arguments regarding the pending motions on September 13, 2007. On September 25, 2007, the trial court granted the City’s motion to strike the purported expert opinions included in the Strietzel affidavit. The trial court also granted the City’s motion to strike the Curry deposition transcript, the Ming deposition transcript, and the Hinchey affidavit from the
 
 Lane
 
 action. With the plaintiffs’ consent, the trial court entered a summary judgment as to one of the defendants. Finally, the trial court granted a summary judgment in favor of the remaining five defendants.
 

 Because it disposed of all remaining claims and defendants, the trial court’s September 25, 2007, summary judgment was final and appealable.
 
 See, e.g., Ex parte Harris,
 
 506 So.2d 1003, 1004 (Ala. Civ.App.1987). Forty-two days later, the plaintiffs filed a notice of appeal to our supreme court.
 
 See
 
 Rule 4, Ala. RApp. P. (a timely notice of appeal must be filed within 42 days of the judgment). The plaintiffs appealed the trial court’s judgment only as to their- claims alleging trespass, negligence, and nuisance against the City. The appeal was transferred to this court by the supreme court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The plaintiffs raise several issues on appeal. We will consider their arguments regarding the trial court’s evidentiary rulings first. Our supreme court has stated the standard of appellate review of a trial court’s evidentiary rulings as follows:
 

 “The standard applicable to a review of a trial court’s rulings on the admission of evidence is determined by two fundamental principles. The first grants trial judges wide discretion to exclude or to admit evidence. ... The second principle ‘is that a judgment cannot be reversed on appeal for an error unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.’
 
 Atkius[ v. Lee,]
 
 603 So.2d [937,] 941 [ (Ala.1992) ].”
 

 Wal-Mart Stores, Inc. v. Thompson,
 
 726 So.2d 651, 655 (Ala.l998)(holding that the trial court did not err in excluding evidence).
 

 The plaintiffs argue on appeal that the trial court erred in striking portions of the affidavit of Don Strietzel. Strietzel’s affidavit includes statements of fact and opinion; the trial court struck the affidavit to the extent that it offers expert opinions. Our supreme court has specifically recognized that a trial court is vested with discretion to determine whether to admit or exclude expert testimony.
 

 “The standard of review applicable to whether an expert should be permitted to testify is well settled. The matter is ‘largely discretionary with the trial court, and that court’s judgment will not be disturbed absent an abuse of discretion.’
 
 Hannah v. Gregg, Bland & Berry, Inc.,
 
 840 So.2d 839, 850 (Ala.2002). We now refer to that standard as a trial court’s ‘exceeding its discretion.’ However, the standard itself has not changed.”
 

 
 *261
 

 Kyser v. Harrison,
 
 908 So.2d 914, 918 (Ala.2005);
 
 see also Martin v. Dyas,
 
 896 So.2d 436, 440 (Ala.2004).
 

 Our supreme court has explained that “a witness must be qualified as an expert before he can give an opinion as an expert.”
 
 Townsend v. General Motors Corp.,
 
 642 So.2d 411, 423 (Ala.1994). Rule 702, Ala. R. Evid., establishes the qualifications an expert must have before he or she can offer opinion testimony, stating “a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.”
 
 [2]
 
 On appeal, the plaintiffs argue that Strietzel was qualified to testify as an expert witness because of his experience as an engineer. They cite
 
 Courtaulds Fibers, Inc. v. Long,
 
 779 So.2d 198 (Ala.2000), in which our supreme court stated that, under Rule 702, an expert’s opinion may derive from knowledge, skill, training, and experience and that Rule 702 does not require that an expert’s opinions be supported by scientific literature.
 
 Id.
 
 at 202.
 

 Strietzel’s affidavit shows the following regarding his experience, education, and opinions. Strietzel received a civil-engineering degree from Marquette University, but the affidavit does not show when he received that degree. Strietzel had been employed by the United States Army as an aerospace engineer, specifically as program manager of New Missile Technology in the United States Army’s Strategic Defense Command. Strietzel retired from his work with the Army in 1988. Strietzel’s affidavit does not state how long he worked as an aerospace engineer or that he worked in any other fields, nor does it state how aerospace engineering relates to the study of floods and then1 causes. Nothing in the affidavit states whether Strietzel, as an aerospace engineer, studied floods and their causes.
 

 According to Strietzel’s affidavit, he has lived near Adridge Creek since 1965, and in the mid-1990s he became concerned about increased flooding in that area. Strietzel states: “My degree in civil engineering and my experience as an aerospace program manager and the fact that I was scaling back on my career put me in a position to serve the neighborhood association and devote extensive time and research to the growing flooding problem.” Strietzel states that he communicated with the City’s representatives frequently about the condition of Adridge Creek and that he “made cross sections of the stream and conducted engineering calculations that showed conclusively that the stream flow at certain points was reduced by an estimated one-third from the poor maintenance and resulting blockages.” Strietzel also states his opinion that “had the creek been properly maintained by clearing out the blockages ... no flood damage would have occurred at my home or at 8124 Hickory Hill Lane, and the damage to the rest of the neighborhood would not have occurred at all or would have been greatly lessened.”
 

 The City argues that Strietzel’s affidavit does not show that he is qualified as an expert in the area of hydrology or in the area of engineering as it relates to storm-water management, floods, or their causes. The City argues that there is no evidence indicating that Strietzel has any education, training, skill, knowledge, or experience in
 
 *262
 
 those areas.
 
 See
 
 Rule 702, Ala. R. Evict Specifically, the City notes that although Strietzel has an engineering degree, his experience is in aerospace engineering, and the plaintiffs have not shown how Strietzel’s experience as an aerospace engineer qualified him as an expert regarding floods, hydrology, or storm-water management. Accordingly, the City argues, Strietzel is not qualified to offer an expert opinion related to the flood or its causes and the trial court correctly excluded his affidavit to the extent that it offered expert opinions as to those issues. We agree.
 

 Our supreme court has stated that “ ‘an expert may not testify to his opinion on matters outside of his field of training and experience.’”
 
 Kyser,
 
 908 So.2d at 919-20 (affirming a trial court’s disqualification of an expert witness who had training in the area of forensic pathology, but not pediatric forensic pathology) (quoting
 
 Central Aviation Co. v. Perkinson,
 
 269 Ala. 197, 203, 112 So.2d 326, 331 (1959)). Although it appears that Strietzel had training and experience in the areas of civil engineering and aerospace engineering, the record does not show that he had any specialized knowledge, training, skill, or experience such as would qualify him to render an opinion as to floods and their causes.
 
 See Kyser,
 
 908 So.2d at 919.
 

 Strietzel stated that he devoted “extensive time and research to the growing flooding problem.” However, lay witnesses may conduct research, and nothing in Strietzel’s affidavit showed that through that time and research he gained the training, experience, knowledge, and skill necessary to render expert opinions regarding floods and their causes. Strietzel stated that he “made cross sections of the stream and conducted engineering calculations”; however, nothing in Strietzel’s affidavit showed how he was qualified to make such cross-sections and engineering calculations regarding streams and floods and to render expert opinions based thereon or that his resulting opinions based on that research was correct.
 
 [3]
 

 Certainly, as our supreme court has stated, “ ‘[experience and practical knowledge may qualify one to make technical judgments as readily as formal education.’ ”
 
 Southern Energy Homes, Inc. v. Washington,
 
 774 So.2d 505, 517 (Ala.2000) (quoting
 
 International Telecomm. Sys. v. State,
 
 359 So.2d 364, 368 (Ala.1978)). However, Strietzel’s affidavit does not show what experience and practical knowledge he had regarding floods and their causes.
 
 See
 
 Rule 702, Ala. R. Evid.
 

 Citing
 
 Marlin v. Dyas,
 
 896 So.2d 436, 441 (Ala.2004), the plaintiffs argue that the trial court’s decision to exclude Strietzel’s expert opinions was a “death knell” to their case. In
 
 Martin v. Dyas,
 
 a medical-malpractice action, the plaintiff designated her expert witness in August 2001. In September 2002, the defendant filed a motion in limine seeking to exclude the witness’s testimony. The trial took place in October 2002, and on the third day of trial, the trial court disqualified the plaintiffs witness and excluded his testimony. On
 
 *263
 
 appeal, after concluding that the plaintiffs witness was qualified to testify as an expert, our supreme court stated the following regarding the trial court’s decision to exclude the testimony:
 

 “[W]e note that the trial court’s decision on the third day of trial to exclude Dr. Clark’s testimony was the death knell to Martin’s case. In a medical-malpractice action, the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care.
 
 Lyons v. Walker Reg’l Med. Ctr.,
 
 791 So.2d 937, 942 (Ala.2000). By waiting until the third day of trial to rule on the Ortho-paedic Group’s motion to exclude Dr. Clark’s testimony,
 
 the trial court left Martin with no viable opportunity to find another expert vvitness
 
 — effectively
 
 preventing her from having any chance of proving her claim.
 
 ”
 

 896 So.2d at 441 (emphasis added).
 

 We find this case materially distinguishable from
 
 Martin.
 
 First, we have determined that Strietzel is not qualified to testify as an expert witness as to the matters regarding which the plaintiffs offer his opinion, whereas the supreme court in
 
 Martin
 
 determined that the plaintiffs witness in that case was qualified. Second, the plaintiff in
 
 Martin
 
 had identified her expert more than a year before the trial and was deprived of the opportunity to obtain another expert. In this case, the plaintiffs identified Strietzel as a purported expert witness just two days before the trial court’s hearing on the defendants’ summary-judgment motions, and they did not engage in discovery before that time. Accordingly, we find the statements in
 
 Martin
 
 regarding a “death knell” unpersuasive and inapplicable in this appeal. Because the plaintiffs did not show that Strietzel is qualified, pursuant to Rule 702, Ala. R. Evid., to testify as an expert regarding floods and them causes, we cannot say that the trial court exceeded its discretion in striking the purported expert opinions contained in Strietzel’s affidavit.
 
 See Kyser v. Harrison,
 
 supra.
 

 The plaintiffs next argue that the trial court erred in striking the deposition transcripts of John Curry and Charles Ming that had been taken in the
 
 Lane
 
 action. It appears that the City was a defendant in the
 
 Lane
 
 action and that the
 
 Lane
 
 action was related to the June 28, 1999, flood. However, the
 
 Lane
 
 action involved different plaintiffs and the defendants were not completely aligned. The City moved to exclude the transcripts, arguing that they were inadmissible hearsay under Rule 802, Ala. R. Evid., and that they did not fall within the “former testimony” exception of Rule 804, Ala. R. Evid. The trial court granted that motion.
 

 On appeal, the plaintiffs argue that the trial court erred in striking the transcripts because, they say, Rule 56, Ala. R. Civ. P., “explicitly contemplates that depositions are to be submitted in opposition to affidavits.” However, our supreme court has stated: “Rule 56, Ala. R. Civ. P., requires that a motion for summary judgment be supported by facts that would be ‘admissible in evidence.’ Hearsay statements that do not fall within an exception are inadmissible and cannot be used as evidence to defeat a properly supported summary-judgment motion.”
 
 Aldridge v. DaimlerChrysler Corp.,
 
 809 So.2d 785, 797 (Ala.2001).
 

 Rule 802, Ala. R. Evid., provides: “Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute.” Rule 801(c), Ala. R. Evid., defines hearsay as a “statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The Curry and Ming deposi
 
 *264
 
 tion transcripts are hearsay within the definition of Rule 801 and are inadmissable under Rule 802, unless they fall within an exception to that rule.
 

 Rule 804(b)(1), Ala. R. Evid., provides that a witness’s testimony in a former trial or action is admissible if the declarant is unavailable and the testimony is
 

 “given (A) under oath, (B) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (C) under circumstances affording the party against whom the witness was offered an opportunity to test his or her credibility by cross-examination, and (D) in litigation in which the issues and parties were substantially the same as in the present cause.”
 

 Rule 804(a) provides, in pertinent part, that a witness is unavailable when he or she
 

 “(1) is exempted by ruling of the court on the ground of privilege from testifying ...; or
 

 “(2) persists in refusing to testify ... despite an order of the court to do so; or
 

 “(3) now possesses a lack of memory ...; or
 

 “(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
 

 “(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant’s attendance ... by process or other reasonable means.”
 

 The record does not demonstrate that Curry or Ming was “unavailable” within the meaning of Rule 804(a). The record does not show that Curry or Ming was exempt from testifying by a ruling of the court; persisted in refusing to testify; had a lack of memory; was unable to testify because of death or mental illness; or that the plaintiffs were unable to procure their attendance at a deposition or hearing.
 
 See
 
 Rule 804(a), Ala. R. Evid. In fact, it is apparent from the record and from the parties’ arguments on appeal that the plaintiffs in this action never attempted to obtain Curry’s or Ming’s testimony with respect to their own claims and the issues in this, their own, ease. Accordingly, neither Curry nor Ming was “unavailable” within the meaning of Rule 804(a).
 

 Additionally, Rule 804(b)(1)(D) requires that the former testimony be taken “in litigation in which the ... parties were substantially the same as in the present cause.” Our supreme court has stated that “by its very terms, Ala. R. Evid. 804(b)(1), unlike the corresponding federal rule, requires not only that the party against whom one seeks to use the testimony be substantially the same, but also that the party seeking to use it be substantially the same.”
 
 Barnes v. Norfolk Southern Ry. Co.,
 
 816 So.2d 27, 29 (Ala. 2001). In this case, the plaintiffs, the parties seeking to use the former testimony, were not parties to the
 
 Lane
 
 action. Accordingly, the parties in this action and the
 
 Lane
 
 action were not “substantially the same” within the meaning of Rule 804(b)(1).
 

 Additionally, although “ ‘[i]t is not essential that all of the issues on the former proceeding shall have been precisely the same as all the issues on the present trial,’ ”
 
 Goetseh v. Goetseh,
 
 949 So.2d 155, 157 (Ala.Civ.App.2006) (quoting 2 Charles W. Gamble,
 
 McElroy’s Alabama Evidence
 
 § 245.07(7) (5th ed.1996)), Rule 804(b)(1)(D) requires that the former testimony be taken “in litigation in which the issues ... were substantially the same as in the present cause.” The City argues that, because the plaintiffs in this action
 
 *265
 
 and the plaintiffs in the
 
 Lane
 
 action were different and did not live in the same houses, the issues presented in the actions were different. Nothing in the record shows what the issues in the
 
 Lane
 
 action actually were, what claims were asserted in that action, or what arguments were made by the parties to that action. Absent such evidence, it is impossible to say that the issues in the
 
 Lane
 
 action and the issues in this action are substantially the same. Additionally, as a practical matter, because the
 
 Lane
 
 action involved different plaintiffs whose homes were at different distances, elevations, and locations relative to Aldridge Creek, it is fair to presume that the issues in this action and the
 
 Lane
 
 action were not substantially the same.
 

 Based on the foregoing, the Curry and Ming deposition transcripts do not fall within the hearsay exception permitting former testimony stated in Rule 804(b)(1), Ala. R. Evid. Accordingly, it appears that the transcripts were properly excluded as hearsay under Rule 802, Ala. R. Evid. The plaintiffs argue the transcripts are otherwise admissible, citing Rule 802, Ala. R. Evid., which states, “Hearsay is not admissible
 
 except as provided by
 
 these rules, or by
 
 other rules adopted by the Supreme Comi of Alabama
 
 or by statute.” (Emphasis added.) The plaintiffs argue on appeal that Rule 804 does not apply and that Rule 32(a)(3)(B), Ala. R. Civ. P., allows the Curry and Ming deposition transcripts to be admitted.
 
 [4]
 

 Rule 32(a), Ala. R. Civ. P., provides, in pertinent part:
 

 “At the trial or upon the hearing of a motion or. an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Alabama Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
 

 “(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than one hundred (100) miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the depositions ....”
 
 [5]
 

 The transcript of Curry’s deposition in the
 
 Lane
 
 action shows that he resides in Opelika. The transcript of Ming’s deposition in the
 
 Lane
 
 action shows that he resides in Montgomery. Opelika and Montgomery are both more than 100 miles from Huntsville. Accordingly, the plain
 
 *266
 
 tiffs argue, they were entitled to use the transcripts pursuant to Rule 32(a)(3)(B).
 

 The Committee Comments on 1973 Adoption of Rule 32 state that the rule, in part, “eliminates the possibility of certain technical hearsay objections which are based not on the content of the deponent’s testimony but on his absence from court.” However, we have not found any case applying Rule 32 to allow the admission of a deposition transcript as the plaintiffs suggest: in a subsequent, separate action when the party submitting the transcript was not a party to the original action and when the party submitting the transcript never attempted to depose the witness. The plaintiffs have not directed this court to any such authority.
 

 The purpose of Rule 32 is to prevent the need for a continuance in order to allow the party submitting the transcript to obtain the witness’s attendance at trial.
 
 See Selby v. Money,
 
 403 So.2d 218, 220 (Ala.1981). That purpose is not served in this circumstance. The record reveals that the plaintiffs never requested a continuance for the purpose of obtaining the testimony of Curry or Ming.
 

 We do not believe that Rule 32 was intended to be applied in a situation such as this, where the deposition was taken in a separate action. In addition to those parts of Rule 32(a) quoted above, Rule 32(a) also provides:
 

 “Substitution of parties pursuant to Rule 25 does not affect the right to use depositions previously taken; and, when an action has been brought in any court of this, state or of the United States or of any other state and
 
 another action involving the same subject matter is afterward brought between the same parties
 
 or them representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.”
 

 (Emphasis added.) Rule 32 thus allows the admission of deposition transcripts from separate actions when “the same subject matter is afterward brought between the same parties” or their successors. The negative implication of this provision is that Rule 32 does not allow the admission of deposition transcripts from separate actions involving different subject matter and/or different parties, such as is the case here. Another interpretation of Rule 32(a) would render the above-quoted provision meaningless. We believe Rule 32(a)(3)(B) was intended to apply in the traditional situation in which deposition testimony is taken in the same action and the transcript is later offered as evidence at trial when the witness becomes unavailable.
 

 Accordingly, because the plaintiffs have not shown that the Curry and Ming deposition transcripts from the
 
 Lane
 
 action are admissible under Rule 32, Ala. R. Civ. P., and because those transcripts do not fall within the former-testimony exception stated in Rule 804(b)(1), Ala. R. Evid., we cannot say that the trial court exceeded its discretion in granting the City’s motion to strike the transcripts.
 

 In their last argument regarding the trial court’s evidentiary rulings, the plaintiffs assert that the trial court erred in granting the City’s motion to strike the affidavit from Byron Hinchey taken in the
 
 Lane
 
 action. However, in their briefs on appeal, the plaintiffs argue only that the trial court’s decision was “obvious error” and an “improper application of Rule 804,” Ala. R. Evid. The plaintiffs cite no authority to support their argument, and they do not explain how the trial court improperly applied Rule 804. Accordingly, the plaintiffs’ “briefs do not contain the legal and factual analysis necessary to comply with Ala. R.App. P. 28(a)(10).”
 
 See White
 
 
 *267
 

 Sands Group, L.L.C. v. PRS II, LLC,
 
 998 So.2d 1042, 1058 (Ala.2008). Accordingly, we affirm the trial court’s decision as to the Hinchey affidavit.
 

 The plaintiffs have not shown that the trial court exceeded its discretion as to any of the evidentiary rulings that the plaintiffs challenge on appeal. Accordingly, we turn to the plaintiffs’ substantive arguments on appeal, namely that the trial court erred in granting a summary judgment for the City as to their claims of negligence, nuisance, and trespass. Our standard of appellate review of a trial court’s summary judgment is settled.
 

 “This court reviews a summary judgment de novo.
 
 Ex parte Ballew,
 
 771 So.2d 1040 (Ala.2000). A summary judgment is appropriate where there is no genuine issue
 
 of
 
 material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.;
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860 (Ala.1988). ‘When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present “substantial evidence” creating a genuine issue of material fact.’
 
 Ex parte Alfa Mut. Gen. Ins. Co.,
 
 742 So.2d 182, 184 (Ala.1999). ‘[Sjubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Asstirance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmoving party and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party.
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412 (Ala.1990).”
 
 Bell v. Owens,
 
 960 So.2d 681, 683-84 (Ala.Civ.App.2006).
 

 Additionally, we note that “an actionable nuisance claim against a municipality is dependent upon the plaintiffs ability to maintain a claim under § 11-47-190[, Ala.Code 1975].”
 
 Hilliard v. City of Huntsville,
 
 585 So.2d 889, 892 (Ala.1991). “[T]he viability of a negligence action against a municipality under § 11-47-190 determines the success or failure of a nuisance action based upon the same facts.”
 
 Id.
 
 at 893. The same is true for an action in trespass.
 
 See Royal Auto., Inc. v. City of Vestavia Hills,
 
 995 So.2d 154, 160 (Ala. 2008) (“The trial court correctly found that because the businesses’ negligent-maintenance claims fail, their nuisance and trespass claims must also fail.”). Accordingly, we will consider the viability of the plaintiffs’ negligence claim under § 11-47-190, Ala.Code 1975. That section provides, in relevant part:
 

 “No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body
 

 The plaintiffs argue that the City neglected to perform maintenance on Al-
 
 *268
 
 dridge Creek for five years and that the failure to maintain the creek caused blockages to develop in the creek that restricted the flow of storm water and caused or contributed to the severity of the flooding of their homes.
 
 [6]
 
 The evidence in the record on appeal shows the following facts. In the late 1970s, the City made efforts to comply with the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq. As part of those efforts, in 1978, the City obtained a permit from the United States Army Corps of Engineers (“USACE”) to perform “wholesale channelization,” maintenance, and dredging of its waterways, including Aldridge Creek. It is undisputed that the City thereafter performed regular maintenance on Aldridge Creek. Primarily, the City dredged the creek to remove sediment, vegetation, and debris.
 

 In June 1994, the USACE advised the City that its maintenance efforts had “substantial adverse environmental impacts on the aquatic habitats” of Aldridge Creek and that changes in the USACE’s regulations “prohibited dredging until further notice.” Per the USACE’s regulations, the City ceased all dredging operations at that time. The factual statements in Strietzel’s affidavit show that during this time he asked the City to clear the stream of “many obstacles, blockages, debris, trees and vegetation that had built up over many years.”
 

 In September 1994, the City’s representatives met with representatives of the USACE. Through its representatives, the USACE again explained that its new regulations prohibited dredging and that the regulations prohibited the removal of any material from Aldridge Creek without a permit. The USACE directed the City to submit permit requests for specific locations that it determined needed maintenance. The City’s representatives expressed them concern that “all the creeks have build up of silt and blockage” and that there was a “high potential for flooding along the major drainage systems.” The City representatives stated: “Past experience indicates a propensity for flooding if dredging is not permitted.” The City’s representatives further expressed their belief that the City had a responsibility to keep the creeks clear. Based on these concerns, the City requested authorization to continue dredging operations as it had done in the past.
 

 At the September 1994 meeting, USACE and City representatives visited several locations along Aldridge Creek that the City had identified as “critical” areas where significant blockages existed. A USACE representative later documented that these locations had only minor accumulations of sediment. He stated that, although the removal of vegetation might improve public perception, the removal of sediment and vegetation from these “critical” areas would “provide negligible tangible results on flood heights” and could actually cause erosion problems. The USACE discouraged the City from requesting permits to remove minor material and vegetation.
 

 In response to the City’s request for authorization to perform widespread maintenance, the USACE stated that it did “not have the authority to grant blanket approval to allow [the City] to dredge all streams within the city.” The USACE again instructed the City to request permits with respect to specific locations in need of maintenance. Pursuant to the USACE’s instructions, the City’s records
 
 *269
 
 show that its drainage division was “shut down until a permit [eould] be acquired for a specific work order.”
 

 In an October 1995 memorandum regarding access to the City’s waterways, the City noted:
 

 “It has been 2 years since any dredge work has been performed on any major waterway due to restrictions set forth by the U.S. Corps of Engineers. The need for maintenance is great. Sediment is continuing to build up causing blockage. Hopefully, with continued cooperation with the Drainage Division and Engineering Department, permits to dredge will be issued soon.”
 

 In April 1997, the USACE granted the City a permit to dredge sediment and remove vegetation at nine locations along Aldridge Creek between miles 3.1 and 7.1. The permit restricted the length of each dredging site and the quantity of sediment that could be removed. It also provided that the work had to be completed by April 2000.
 

 In his affidavit, plaintiff Jose Gonzalezr-Tablada states that before the June 28, 1999, flood, he observed Aldridge Creek and was concerned that the creek was clogged with debris, sediment, large trees, logs, and vegetation. Strietzel’s affidavit shows that between 1997 and 1999 he continued to communicate with the City regarding areas of Aldridge Creek that he believed needed maintenance. Specifically, Strietzel stated that he identified mile 6.83 as an area in need of maintenance and that the City’s representatives agreed that obstructions in the creek at that location were a problem. The record does not show whether the City requested a permit from the USACE to dredge the locations of Aldridge Creek that Strietzel identified, or whether the USACE granted or denied any such request.
 

 The record shows that, in October 1997, the City obtained a modification to the April 1997 permit, which allowed it to dredge three additional locations along Al-dridge Creek. It is unclear in the record where these locations are in relation to the plaintiffs’ properties. Again, in July 1998, the City obtained a modification to the April 1997 permit. That modification allowed the City to dredge two additional locations along Aldridge Creek. Once again, however, it is unclear in the record where these locations are in relation to the plaintiffs’ properties. Strietzel states in his affidavit that the City did not perform maintenance in the areas he identified, but instead performed maintenance in other locations.
 

 On June 28, 1999, the Aldridge Creek area experienced unusually heavy rainfall. The defendants’ storm-water management expert, Byron Hinehey,
 
 [7]
 
 opined that, based on United States Geological Survey data, “the rainfall event of June 28, 1999, significantly exceeded, at or near plaintiffs’ property, a 100-year rainfall event” and that “the rainfall event of June 28, 1999, represented an unprecedented event of a nature that completely overwhelmed the natural, improved natural, and artificial drainage structures within the Aldridge Creek Watershed.”
 

 The record shows that, after the flood, the City requested and obtained a permit from the USACE to dredge specific areas of Aldridge Creek, including areas between miles 6.25 to 6.40 and miles 7.0 to 7.42. Strietzel stated that the City removed many blockages, trees, and debris from the areas that had flooded, but he did not specify whether the City dredged the locations he had identified before the flood.
 

 
 *270
 
 The City’s hydrology and storm-water management expert, Andrew Reese,
 
 [8]
 
 stated the following opinions in his affidavit:
 

 “(i) the [City’s] handling of residential and other development within the Al-dridge Creek flood plain mirrored, at all times relevant to this litigation, the standards of care and/or general practices employed by similarly situated cities and counties, both regionally and nationwide; “(ii) the [City’s] approval process for subdivision plats, at all times relevant to this litigation, complied with the then-existing standards of care and/or general practices employed by the [City] and similarly situated cities and counties, both regionally and nationwide;
 

 “(Hi) the [City’s] development of a federal flood insurance program initially mirrored, and now exceeds, the development of such programs by similarly situated cities and counties, both regionally and nationwide;
 

 “(iv) the [City’s] storm water ordinances and regulations, including the [City’s] design and detention requirements, are not and have not been, since adoption, inconsistent with storm water ordinances and regulations, including design and detention requirements, employed by other similarly situated cities or counties, both regionally and nationwide; “and
 

 “(v) the [City’s] requests for maintenance and channel improvement permits and its general maintenance program for lower portions of Aldridge Creek from 1978 to present, to the extent permitted by the United States Corp of Engineers, exceeded the levels of maintenance or channel improvement performed by most similarly situated cities and counties, both regionally and nationwide (who tend to do little beyond emergency maintenance of natural, altered natural, or artificial creeks and channels).”
 

 Our supreme court has stated: “In any negligence case, the plaintiff bears the burden of proving the existence of a duty owed by the defendant, a breach of that duty, causation, and damage.”
 
 Glass v. Birmingham Southern R.R.,
 
 905 So.2d 789, 794 (Ala.2004);
 
 see also Royal Automotive,
 
 995 So.2d at 160.
 

 “In order to prevail on its motion for a summary judgment, the City was not required to prove that the flooding was not a result of its negligent maintenance.
 
 See Ex parte General Motors Corp.,
 
 769 So.2d 903, 909 (Ala.1999).
 

 “ ‘ “If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the non-movant’s claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant’s evidence is insufficient to establish an essential element of the nonmovant’s claim.” ’
 

 “Id.
 
 (quoting Justice Houston’s special concurrence in
 
 Berner v. Caldwell,
 
 543 So.2d 686, 691 (Ala.1989), overruling
 
 Berner
 
 and adopting Justice Houston’s special concurrence in
 
 Berner
 
 as the accurate statement of the law) (emphasis omitted).”
 

 Locke v. City of Mobile,
 
 851 So.2d 446, 448-49 (AIa.2002). Assuming, without deciding, that the plaintiffs presented evidence sufficient to establish that the City had a duty to maintain Aldridge Creek, the City presented affirmative evidence that it did not breach such a duty, thus negating an essential element of the plaintiffs’ claim.
 

 
 *271
 
 The City presented evidence indicating that it was prohibited by federal regulations and specific instructions from the USACE from performing maintenance on Aldridge Creek. The City also presented evidence showing that it requested a permit to dredge Aldridge Creek as it had done before to the 1994 prohibition and that its request was denied. Thereafter, pursuant to the USACE’s instructions, the City requested and obtained permits to maintain specific areas of Aldridge Creek. The City’s experts testified via affidavit that the City’s actions met or exceeded the standard of care and that the flood was an unusual event. The City, therefore, presented affirmative evidence showing that it did not breach any duty to maintain Al-dridge Creek.
 

 The burden then shifted to the plaintiffs to present substantial evidence showing a genuine issue of material fact.
 
 Bell v. Owens,
 
 960 So.2d at 683-84. The plaintiffs presented evidence showing that obstructions existed in Aldridge Creek and that they requested that the City perform additional maintenance at specific locations along Aldridge Creek.
 
 See Byrd v. City of Citronelle,
 
 937 So.2d 515, 521 (Ala.2006) (finding that the plaintiff failed to present substantial evidence showing a city had breached a duty to maintain a ditch because she did not show that there were any obstructions in the ditch and did not identify anything the city did or failed to do that amounted to a lack of maintenance). However, the plaintiffs’ position is based on the proposition that the City did not do all that it should have done to maintain Aldridge Creek. The evidence, in fact, shows that the City was aware of the need for maintenance along Aldridge Creek. However, the evidence also shows that the City could not have maintained Aldridge Creek as the plaintiffs argue it should have done without violating federal regulations and specific instructions from the USACE. A defendant cannot be held liable for failing to perform an act that it is prohibited from performing.
 
 See, e.g., Western Union Tel. Co. v. Young,
 
 138 Ala. 240, 36 So. 374 (1903).
 

 In
 
 Young,
 
 our supreme court held that a defendant telegraph company could not be held liable for failing to send a message that federal regulations prohibited it from sending. The court explained:
 

 “It is sufficient if the law prohibits the doing of the act and when it does, the court being organized under the law and required to administer it, cannot enforce any supposed rights predicated upon a prohibited act or the omission to perform an act that is prohibited. — 15 Am. & Eng. Ency. Law (2d Ed.) 941;
 
 Woods v. Armstrong,
 
 54 Ala. 150 [(1875)];
 
 Robertson v. Hayes
 
 [sic], 83 Ala. 290 [(1888)].
 

 “The defendant being prohibited by the express words of the statute from transmitting the message without its being stamped, it was under no obligation to do so.
 
 It cannot be forced to violate the law,
 
 nor can its act of violation, if it attempted to transmit and deliver the message without the requisite stamp, be made the predicate for a liability for its negligent failure to transmit and deliver or for its intentional and wanton failure to transmit it.”
 

 138 Ala. at 243, 36 So. at 375 (emphasis added). In this case, the City presented evidence indicating that it performed all the maintenance it legally could have done. The plaintiffs failed to present substantial evidence showing that the City could have done more with regard to areas of the creek that would have prevented flooding; moreover, the City cannot be forced to violate the law.
 

 The evidence presented by the City negates an essential element of the plaintiffs’
 
 *272
 
 claims, and no genuine issue of material fact exists.
 
 See
 
 § 11-47-190, Ala.Code 1975. Accordingly, the City was entitled to a judgment as a matter of law, and the trial court’s judgment is due to be affirmed. We need not address the plaintiffs’ remaining arguments on appeal.
 

 AFFIRMED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . Because the plaintiffs appeal the trial court's judgment only as to their claims against the City, we do not disctxss their claims against the other defendants.
 

 [2]
 

 . Neither party argues that the requirements for the admission of scientific evidence stated in
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or
 
 Frye v. United States,
 
 293 F. 1013 (D.C.Cir.1923), apply to Strietzel’s affidavit. Accordingly, we will consider only the requirements stated in Rule 702, Ala. R. Evid.
 

 [3]
 

 . We note that Strietzel stated that he based his opinions on his review and understanding of rainfall data, flood elevations, topography, and reports and studies on “the watershed and flooding problems.” However, although reading such data would certainly inform an ’ expert's opinion, it has no bearing on whether the witness is qualified to render an expert opinion based on that information.
 
 Cf. Southern Energy Homes, Inc. v. Washington,
 
 774 So.2d 505, 517 (Ala.2000) ("'A critical distinction in this case is that an objection to testimony of a competent expert based on the witness's lack of knowledge goes to the weight of the evidence and not its admissibility.' ” (quoting
 
 Tidwell v. Upjohn Co.,
 
 626 So.2d 1297, 1300 (Ala. 1993))).
 

 [4]
 

 . The plaintiffs argue in their reply brief that the standard of review as to this issue is not whether the trial court exceeded its discretion because, the plaintiffs argue, the trial court had no discretion to exclude evidence "that the rules of procedure plainly allow.” The plaintiffs cite no authority for this proposition. As stated above, it is well settled that trial courts are vested with discretion whether to admit or exclude evidence based on the Alabama Rules of Evidence and the Alabama Rules of Civil Procedure.
 
 See, e.g., Wal-Mart Stores, Inc. v. Thompson,
 
 726 So.2d 651, 655 (Ala.1998). Our supreme court has applied the same standard of review in determining whether deposition testimony should be admitted under Rule 32, Ala. R. Civ. P.
 
 See, Washington v. Massey Bus. Prods., Inc.,
 
 576 So.2d 181, 183 (Ala.1991); and
 
 Pugh v. State Farm Fire & Cas. Co.,
 
 474 So.2d 629 (Ala. 1985).
 

 [5]
 

 . The plaintiffs do not argue that the Curry and Ming deposition transcripts were offered to impeach or rebut any testimony pursuant to Rule 32(a)(1) or (a)(4), Ala. R. Civ. P.
 

 [6]
 

 . On appeal, the plaintiffs have abandoned other theories of the case that they asserted in their complaint.
 

 [7]
 

 . The plaintiffs have not challenged the qualifications of this expert witness of the City.
 

 [8]
 

 . The plaintiffs have not challenged the qualifications of this expert witness of the City.